**Katie HAAS, Plaintiff,**

v.

**GROUP HEALTH PLAN, INC. and Roger Young, M.D., Defendants.**

**No. 94–CV–231–WDS.**

United States District Court, S.D. Illinois.

Dec. 27, 1994.

Jack A. Strellis, Strellis, Faulbaum, Walsh & Field, Waterloo, IL, for plaintiff.

Beth C. Boggs, LaTourette, Schlueter & Byrne, St. Louis, MO, for defendants.

### MEMORANDUM AND ORDER

STIEHL, District Judge:

Before the Court is defendant Group Health Plan, Inc.'s motion for summary judgment as to Count I of plaintiff's amended complaint.

Count I of the amended complaint alleges that Group Health Plan, Inc. (GHP), a health maintenance organization, or HMO, is liable to plaintiff for medical malpractice committed during an ear irrigation procedure. Count II asserts that Roger Young, a nurse practitioner who exercised control over the ear irrigation procedure, is also liable to plaintiff for the same acts of medical malpractice. Plaintiff is a member of GHP through her employment at Magna Bank, and the parties agree that GHP was qualified as an employee benefits plan under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*

GHP's summary judgment motion focuses solely on whether ERISA preempts plaintiff's state-law medical malpractice claims.

On February 24, 1992, plaintiff traveled to a GHP facility seeking medical treatment for a "closed feeling" which had persisted in her ears. After asking plaintiff about her symptoms, defendant Young examined plaintiff and concluded that her ears suffered from a build-up of wax. Two GHP employees prepared a solution which would be used to clean plaintiff's ears. Using a syringe to inject the solution, a GHP technician cleaned plaintiff's right ear without event. As the technician first applied the syringe to plaintiff's left ear, she heard a loud popping sound and felt excruciating pain shoot from her ear throughout the entire left side of her body. Plaintiff felt an instant numbness in her face, and thought she might pass out. After experiencing pain for several days, plaintiff consulted a physician, who informed her that her left tympanic membrane, or eardrum, had been punctured. The amended complaint requests damages for pain and suffering, medical expenses, and permanent disability.

Plaintiff originally filed this two-count action in state court, but defendants removed the action to this Court. The notice of removal invoked the Court's diversity jurisdiction, 28 U.S.C. § 1332, and federal question jurisdiction, 28 U.S.C. § 1331, claiming that ERISA, 29 U.S.C. § 1144(a), preempts plaintiff's medical malpractice claim against GHP. Because the Court clearly possesses diversity jurisdiction, subject matter jurisdiction is not an issue.

Count I of the amended complaint does not specifically allege that GHP is liable for the negligent acts of Young or any other individual; the complaint actually avers that GHP controlled the procedure and was negligent in puncturing plaintiff's eardrum. Obviously, GHP is not a person who could have punctured plaintiff's eardrum. While Count I does not name any individual employee or agent, the nature of the allegations demonstrate that plaintiff seeks to hold GHP vicariously liable for the negligent acts of an employee or agent on the basis of respondeat superior or ostensible agency.

Determining whether a federal statute preempts a particular state law is a question of discerning congressional intent. *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 137–38, 111 S.Ct. 478, 481–82, 112 L.Ed.2d 474 (1990). ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries by strictly regulating the creation and administration of employee pension and benefit plans. *Id.* at 137, 111 S.Ct. at 481. To effectuate its intent to create a comprehensive, uniform federal law regulating employee benefit plans, Congress drafted the ERISA preemption clause in extremely expansive terms. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490 (1983). ERISA's preemption clause states that the statute preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).

The preemption issue hinges upon whether the state law involved "relates to" the ERISA plan. The Supreme Court has repeatedly indicated that the "relates to" clause should be interpreted extremely broadly. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45–46, 107 S.Ct. 1549, 1551–1552, 95 L.Ed.2d 39 (1987); *Shaw*, 463 U.S. at 97, 103 S.Ct. at 2899. The "relates to" phrase is to be given its "broad, common-sense meaning, such that a state law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has connection with or reference to such a plan." *Pilot Life Ins. Co.*, 481 U.S. at 47, 107 S.Ct. at 1552. The clause is not limited to state laws specifically designed to affect employee benefit plans, but may also preempt state laws which indirectly affect benefit plans. *Ingersoll–Rand*, 498 U.S. at 139, 111 S.Ct. at 482. The fact that ERISA preemption would leave a plaintiff without a remedy is irrelevant to the inquiry, because availability of a federal remedy is not a condition to federal preemption. *Lister v. Stark*, 890 F.2d 941, 946 (7th Cir.1989), *cert. denied*, 498 U.S. 1011, 111 S.Ct. 579, 112 L.Ed.2d 584 (1990), *citing Pilot Life Ins. Co.*, 481 U.S. at 54, 107 S.Ct. at 1556.

However, ERISA preemption is not without limits. In *Shaw*, the Supreme Court held that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. While ERISA's preemption provision is broad, "the word 'related' must not be taken literally." *Pohl v. National Benefits Consultants, Inc.*, 956 F.2d 126, 128 (7th Cir.1992). Thus, the ERISA preemption issue becomes a question of line-drawing. The Court must determine whether a state law medical malpractice claim against an HMO plan through a theory of vicarious liability for negligent treatment by its employees or agents is sufficiently "related to" the plan as to fall within the expansive ERISA preemption clause.

No circuit court of appeals has addressed the precise issue currently before the Court. Numerous district courts have faced the issue, and the split among courts exemplifies the difficulty this preemption issue presents. *See Kearney v. U.S. Healthcare, Inc.*, 859 F.Supp. 182 (E.D.Pa.1994); *Burke v. Smithkline Bio–Science Laboratories*, 858 F.Supp. 1181 (M.D.Fla.1994); *Paterno v. Albuerne*, 855 F.Supp. 1263 (S.D.Fla.1994); *Smith v. HMO Great Lakes*, 852 F.Supp. 669 (N.D.Ill. 1994); *Independence HMO, Inc. v. Smith*, 733 F.Supp. 983 (E.D.Pa.1990) (cases rejected ERISA preemption of medical malpractice claims). *But see Visconti by Visconti v. U.S. Health Care*, 857 F.Supp. 1097 (E.D.Pa. 1994); *Dukes v. U.S. Health Care Sys. of Pa., Inc.*, 848 F.Supp. 39 (E.D.Pa.1994); *Nealy v. U.S. Healthcare HMO*, 844 F.Supp. 966 (S.D.N.Y.1994); *Ricci v. Gooberman*, 840 F.Supp. 316 (D.N.J.1993); *Altieri v. Cigna Dental Health, Inc.*, 753 F.Supp. 61 (D.Conn. 1990) (cases found medical malpractice claims preempted). The difficulty of this issue is exacerbated by the fact that appellate courts have used broad language to describe the preemption clause in factually dissimilar cases, and by the fact that the district court opinions on this subject have often involved different types of medical malpractice claims.

Clearly, claims arising from disputes regarding the type of benefits provided by an HMO plan, or the extent of benefits promised by the HMO are related to the plan, and

are preempted. *Pohl*, 956 F.2d at 127–28; *Lister*, 890 F.2d at 944–45. Several circuit courts have also held that claims characterized as medical malpractice actions which actually arose from the manner in which the HMO administered plan benefits are also preempted. *Kuhl v. Lincoln Nat'l Health Plan*, 999 F.2d 298, 303 (8th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994) (malpractice claim against HMO plan for delaying heart surgery stemmed from the administration of benefits, and was therefore preempted); *Corcoran v. United Healthcare, Inc.*, 965 F.2d 1321, 1332–34 (5th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 812, 121 L.Ed.2d 684 (1992) (malpractice claim against HMO plan was based on utilization review decision that hospitalization was not medically necessary, thus involving a benefit determination, and resulting in preemption). Plaintiff's claim is based on substandard treatment, and does not arise from GHP's administration of benefits, or the type of benefits provided or promised. Therefore, the reasoning of *Kuhl, Pohl,* and *Corcoran* does not support preemption in this case, as those cases involve benefit determinations.

■ While the *Pohl* and *Corcoran* lines of cases establish that ERISA preempts cases involving benefit eligibility or administration, other cases have properly ruled that negligence claims against HMO plans based on negligent retention or selection of physicians, or other similar theories are also preempted. *See Altieri*, 753 F.Supp. at 61. ERISA preempts these claims because they generally interfere with administration of the benefit plan.

■ This Court concludes that when an HMO plan elects to directly provide medical services or leads a participant to reasonably believe that it has, rather than simply arranging and paying for treatment, a vicarious liability medical practice claim based on substandard treatment by an agent of the HMO plan is not preempted. *Kearney*, 859 F.Supp. at 185. The Seventh Circuit has not defined what types of cases trigger ERISA preemption, but upon review of pertinent case law, the Second Circuit found that the types of cases ERISA preempts are:

those that provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee. Those that have not been preempted are laws of general application—often traditional exercises of state power or regulatory authority—whose effect on ERISA plans is incidental.

*Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 146 (2d Cir.), *cert. denied*, 493 U.S. 811, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989). Thus, "[w]hat triggers ERISA preemption is not just any indirect effect on administrative procedures but rather an effect on the primary administrative functions of benefit plans, such as determining an employee's eligibility for a benefit and the amount of that benefit." *Monarch Cement Co. v. Lone Star Indus., Inc.*, 982 F.2d 1448, 1452 (10th Cir.1992), *quoting Borges*, 869 F.2d at 146–47. A vicarious liability medical malpractice action based solely on substandard treatment is not an alternative action to collect benefits, and does not interfere with calculation of benefits. Similarly, a vicarious liability medical malpractice claim does not refer to and apply solely to an ERISA plan, but rather, state law on this subject is tort law of general application with an incidental effect on ERISA plans. Plaintiff's claim does not affect administration of the plan; she traveled to an HMO-operated facility, received allegedly negligent treatment, and seeks recovery based on that substandard treatment. Such a class of actions does not involve administration of the plan in any way, and affects plans "in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901.

■ The cases cited by GHP generally rely on the same justifications to support preemption. Several cases hold that a determination of ostensible agency necessitates examination of the plan to determine if the HMO held out the physician in question as its agent, and therefore such claims relate to the plan and are preempted. *See Dukes*, 848 F.Supp. at 42; *Ricci*, 840 F.Supp. at 317. However, reference to the plan to determine

ostensible agency "does not implicate the concerns underlying the preemption provision." *Kearney*, 859 F.Supp. at 186. The mere fact that a claim requires examination of a plan to resolve a contractual issue does not alone justify preemption. To illustrate this point, the *Kearney* court offered the hypothetical that a physician suing a HMO for remuneration for his services must refer to the plan to establish that he was a participating physician, that the procedures performed were covered or authorized, or for numerous other potential reasons, however, such an action would not be preempted despite reliance on the plan itself. *Kearney*, 859 F.Supp. at 186–87, *citing Mackey v. Lanier Collection Agency & Serv. Inc.*, 486 U.S. 825, 833 n. 8, 108 S.Ct. 2182, 2187 n. 8, 100 L.Ed.2d 836 (1988).

Courts ruling in favor of preemption have also noted that vicarious liability claims would require examination of the plan to determine if the services actually provided measured up to the services promised, therefore making the claim related to the plan. *Dukes*, 848 F.Supp. at 42; *Ricci*, 840 F.Supp. at 317; *Altieri*, 753 F.Supp. at 62. Medical malpractice claims based on treatment do not require a court to determine if a promised benefit was actually provided, as such claims would be preempted; rather, the Court must decide if the services provided deviated from the applicable standard of care. *Kearney*, 859 F.Supp. at 186. As the *Kearney* court noted, "a claim that one was denied a promised benefit is preempted. A claim that one received a promised service from a provider who performed that service negligently is another matter." *Id.* Courts favoring preemption have also expressed hesitancy in allowing such tort claims against HMO's, in light of the breadth of ERISA's preemption clause and the implications of imposing higher costs on HMO's. However, this Court is reluctant to preempt state tort law claims based on substandard treatment, a claim unrelated to administration of a plan, where there is no reliable evidence of Congressional intent to do so. *Smith*, 852 F.Supp. at 672. *See Cipollone v. Liggett Group, Inc.*, —— U.S. ——, 112 S.Ct. 2608, 2618, 120 L.Ed.2d 407 (1992). The desire to avoid imposing higher costs also does not justify preemption, because a state law which increases costs to HMO plans is not necessarily "related to" a plan. In addition, if costs were determinative, employee plans would be exempt from nearly all state tort laws, and they clearly are not. *Kearney*, 859 F.Supp. at 186, *citing Mackey*, 486 U.S. at 833, 108 S.Ct. at 2187, and *Pohl*, 956 F.2d at 128.

Plaintiff has presented evidence that her eardrum was punctured during treatment at a facility operated by GHP. Her vicarious liability medical malpractice claim against GHP is clearly based upon defendant Young's negligent treatment, not matters regarding administration of benefits or the plan. In *Corcoran*, the Fifth Circuit seemingly recognized a distinction between vicarious liability medical malpractice claims involving plan administration and those involving a "doctor in the course of treatment." 956 F.2d at 1333 n. 16. The *Corcoran* court found its holding to be factually distinguishable from the decision in *Independence HMO*, 733 F.Supp. at 983, on the grounds that the *Corcoran* plaintiffs' claims were based on plan benefits and management, while the *Independence HMO* case dealt with negligent treatment. 956 F.2d at 1333 n. 16. Upon the facts of this case, the Court concludes that plaintiff's vicarious liability medical malpractice claim is based on substandard treatment by a purported GHP employee and is not sufficiently related to the plan as to fall within the ERISA preemption clause.

Accordingly, the Court DENIES defendant Group Health Plan, Inc.'s motion for summary judgment.

**IT IS SO ORDERED.**