**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**October 31, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JAMES D. LIND and LINDA
STILLWELL-LIND,

      Plaintiffs-Appellants,

v.

AETNA HEALTH, INC.,

      Defendant-Appellee.

No. 05-5055

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. NO. 04-CV-494-K)**

---

Jason B. Aamodt of Miller Keffer Bullock Pedigo, Tulsa, Oklahoma, and Morris
D. Bernstein, Tulsa, Oklahoma, for Appellants.

Timothy A. Carney of Gable and Gotwals, Tulsa, Oklahoma, for Appellees.

---

Before **BRISCOE**, **McCONNELL**, and **SILER**,[*] Circuit Judges.

---

**McCONNELL**, Circuit Judge.

---

      The Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001,

can be a fruitless and thorny ground for plaintiffs, and many seek to avoid it

---

[*]The Honorable Eugene E. Siler, Senior Circuit Judge, United States Court
of Appeals for the Sixth Circuit, sitting by designation.

entirely by bringing their insurance claims under state law. The Supreme Court has increasingly circumscribed such state-law claims, however, finding the preemptive sweep of ERISA to be so "extraordinary" that it bars all claims of close relation. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987). Nonetheless, James D. Lind ("Lind") and Linda Stillwell-Lind sought to bring claims against their insurer, Aetna Health, Inc. ("Aetna"), under Oklahoma common law. The Linds believe that their tort and contract claims are not preempted by ERISA, because they challenge not the insurance plan itself, but actions by Aetna that Appellants claim are outside the scope of that plan. In the alternative, the Linds seek leave to amend their complaint to include claims under ERISA for compensatory and punitive damages. The private-action provisions of ERISA have been narrowly construed, however, to exclude most forms of make-whole relief.

The Linds fall in a long – and growing – line of plaintiffs who find themselves squeezed between the broad preemptive sweep of ERISA and narrow construction of remedies under the Act itself. We find that the Linds have viable claims neither inside ERISA nor outside it, and we **AFFIRM** the district court's grant of summary judgement and denial of leave to amend the claim.

## I. Facts and Procedural Background

James D. Lind, a construction manager, was covered by Aetna under his wife's health insurance plan. In July 2002, he was diagnosed with Multiple

Sclerosis ("MS").  His symptoms, including recurrent and severe headaches, dizziness, and depression, left him unable to work.  Shortly after the diagnosis, Aetna referred Mr. Lind to Dr. Jorge Gonzalez, a neurologist, for treatment.  Dr. Gonzalez prescribed a three-drug regime – Copaxone, Provigil, and Klonopin – which successfully reversed Mr. Lind's symptoms, allowing him to return to work.

In February 2003, Mr. Lind went to a pharmacy to pick up his Provigil renewal, only to be told by the pharmacist that no further renewals had been authorized.  Mr. Lind informed Dr. Gonzalez of the denial, who in turn informed Aetna of his vigorous objections to the change.  Aetna told Dr. Gonzalez that Mr. Lind must first try Ritalin, a "step drug," before the company would authorize payment for further Provigil prescriptions.  Dr. Gonzalez, after protesting, wrote Mr. Lind a prescription for Ritalin.  Mr. Lind filled the prescription, began taking the drug, and almost immediately experienced a renewal of his symptoms.  Aetna re-authorized payment for Provigil several days later, but the new symptoms proved irreversible, and Mr. Lind remains disabled and unable to work.[**]

On May 21, 2004, the Linds filed a petition in the District Court of Tulsa County, Oklahoma, against Aetna, alleging medical negligence, medical

---

[**] Appellants also raise claims stemming from a second alleged incident of misconduct by Aetna, two months later.  Because those claims were never before the lower court, we decline to examine them here. *In re Walker*, 959 F.2d 894, 896 (10th Cir. 1992).

negligence under respondeat superior, tortious interference with doctor/patient relationship, reckless endangerment, loss of consortium, and punitive damages. Aetna removed the action to the United States District Court for the Northern District of Oklahoma pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1446(a). On June 21, 2004, the day Aetna's answer was due, the United States Supreme Court issued its decision in *Aetna Health, Inc. v. Davila*, 542 U.S. 200 (2004), which reaffirmed a broad interpretation of ERISA's preemptive scope. Aetna filed a motion to dismiss, based largely on *Davila*, and the Linds moved to amend their complaint to include claims under ERISA. The district court granted Aetna's motion and denied the Linds'. The Linds appeal both rulings.

## II. Preemption of state-law claims

We begin by addressing whether the Linds' state-law claims are barred by ERISA, which preempts all state laws that "relate to" employee benefit plans. 29 U.S.C. § 1144(a). It is undisputed that the Linds' original claims are based on state law and that Aetna's plan is an employee benefit plan; the issue is whether the claims "relate to" the Aetna plan. This court reviews the district court's determination of preemption *de novo*. *Airparts Co. v. Custom Benefit Servs. of Austin, Inc.*, 28 F.3d 1062, 1064 (10th Cir. 1994).

Both the language of the statute and its legislative history indicate that Congress intended ERISA to sweep with broad force. The Act's stated purpose is to protect the participants in employee benefit plans by "providing for

-4-

appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). The conference report shows that such language was intended to parallel that of the Labor-Management Relations Act of 1947, which "pre-empts any 'state-law claim [whose resolution] is substantially dependent upon the analysis of the terms of an agreement made between the parties in a labor contract.'" *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 55 (1987) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985)). As a result, the Supreme Court has found ERISA to preempt nearly all state claims relating to causes of action against covered health insurers, even when "the elements of the state cause of action [do] not precisely duplicate the elements of an ERISA claim." *Davila*, 542 U.S. at 216.

Appellants face an unenviable task in distinguishing their case from *Davila*, in which the Supreme Court found preemption on similar claims and nearly identical facts. Juan Davila's treating physician prescribed Vioxx to remedy Mr. Davila's arthritis, but Aetna refused to authorize payment until Mr. Davila tried a "step drug," Naprosyn, first. *Davila*, 542 U.S. at 205; *Roark v. Humana, Inc.*, 307 F.3d 298, 303 (5th Cir. 2002). When Mr. Davila began taking Naprosyn, he suffered a severe reaction that required extensive treatment and hospitalization. *Davila*, 542 U.S. at 205. He brought claims to recover his medical costs against Aetna under the Texas Health Care Liability Act, which provided for broader remedies than did ERISA. *Id.* The Court held that Mr.

Davila's claims were entirely pre-empted: "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id*. at 209.

The Linds make several attempts to distinguish their case from *Davila,* none of which we find persuasive. First, they argue that this case is distinct because, rather than deny coverage within the plan's rules, Aetna misapplied, or "acted outside of" the plan when it did not follow appropriate notification procedures in declining to renew Mr. Lind's prescription. That, however, is a distinction without a difference. *Davila* is clear that ERISA applies whenever "respondents complain . . . about denials of coverage promised under the terms of ERISA-regulated employee benefit plans," or "to rectify a wrongful denial of benefits." *Id.* at 211, 214. The language of ERISA itself makes clear that it includes civil actions "to recover benefits due . . . under the terms of [the] plan." 29 U.S.C. § 1132(a)(1)(B). ERISA applies to denials of coverage that are either proper under the plan's rules or improper under the plan's rules.

Appellants also argue that their claims for medical negligence and respondeat superior are outside the scope of *Davila*. They claim that a Dr. Jane Doe, employed by Aetna, "made the determination that Ritalin rather than Provigil was the appropriate drug to treat Lind's MS. Aetna then imposed this determination upon Lind's treating physician." Appellants' Br. 10. In support of

this claim, the Linds cite *Pacificare of Oklahoma, Inc. v. Burrage*, 59 F.3d 151 (10th. Cir 1995), in which a patient sued his doctor for medical malpractice and included a claim for respondeat superior against the doctor's employer, a health maintenance organization. *Id.* at 153. The *Pacificare* Court found for the plaintiff, holding that respondeat superior claims against insurer-employers for medical malpractice survive ERISA. *Id.* at 155. *Pacificare* carves out a very narrow exception, however. The Court made clear that its holding was based on the fact that "the present claim does not involve the administration of benefits or the level or quality of benefits promised by the plan; the claim alleges negligent care by the doctor and an agency relationship between the doctor and the HMO." *Id.* This type of claim arises "when an HMO plan elects to directly provide medical services or leads a participant to reasonably believe that it has, rather than simply arranging and paying for treatment." *Id.* (quoting *Haas v. Group Health Plan, Inc.*, 875 F.Supp. 544, 548 (S.D. Ill. 1994)). Such is not the case here. Dr. Jane Doe was not acting as a treating physician, nor is Mr. Lind alleging medical negligence against his actual treating physician, Dr. Gonzalez. Moreover, there is no agency relationship between Dr. Gonzalez – an outside provider – and Aetna for the purposes of prescribing medication. In fact, the Linds' claims are specifically precluded by the language of *Pacificare* itself, which allows for claims only where "the administration of benefits" is not

involved. *Id.* Appellants' medical negligence claim is unavoidably linked to, and is therefore preempted by, ERISA.

### III. ERISA claims

We now turn to whether the Linds were properly denied leave to amend their complaint to include ERISA claims. We have held that, under Fed. R. Civ. P. 15(a), "leave to amend shall be given freely," although "the district court may deny leave to amend where amendment would be futile. A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Bradley v. J.E. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) (quoting *Jefferson County Sch. Dist. v. Moody's Investor's Serv.*, 175 F. 3d 848, 859 (10th Cir. 1999)). We review a denial of permission to amend a complaint for abuse of discretion. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

The Linds' proposed amended complaint included claims for equitable relief under ERISA § 502(a)(3). That provision mandates that any relief granted be "equitable," 29 U.S.C. § 1132(a)(2), which the Supreme Court has found to preclude most forms of make-whole monetary restitution. In *Great-West Life & Annuity Ins. v. Knudson*, 534 U.S. 204 (2002), the Court held that the restitution of tort proceeds to an insurer was not an equitable form of relief. *Id.* at 214. In the process, the Court laid out a framework for such determinations: "In the days of the divided bench, restitution was available in certain cases at law, and in certain others in equity." *Id.* at 212. "[F]or restitution to lie in equity, the action

-8-

generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* at 214.

Justice Ginsburg and others have noted the lopsided results this interpretation produces: "Because the Court has coupled an encompassing interpretation of ERISA's preemptive force with a cramped construction of the equitable relief allowable under § 502(a)(3), a regulatory vacuum exists: [V]irtually all state law remedies are preempted but very few federal substitutes are provided." *Davila*, 542 U.S. at 222 (Ginsburg, J., concurring) (internal quotation marks omitted). She goes on to suggest the remedy that the Appellants here seek: a broader interpretation of equitable relief under § 502(a)(3). She notes that the respondents in *Davila* "declined the opportunity to amend their complaints to state claims for relief under § 502(a)," but offers that such a course would be "an effective remedy others similarly circumstanced might fruitfully pursue." *Id.* at 223-24.

Notwithstanding this suggestion, our interpretation of § 502(a) has continued to follow the narrow path laid out by *Great-West*. In *Millsap v. McDonnell Douglas Corp.,* 368 F.3d 1246 (10th Cir. 2004), we held that while equitable monetary relief may take the form of accrued benefits due, it could not, as requested by the plaintiffs, include back-pay: "Backpay is compensatory because the award is measured by an employee's loss rather than an employer's

gain." *Id.* at 1253. In *Callery v. U.S. Life Ins.*, 392 F.3d 401 (10th Cir. 2004), we held that equitable relief does not encompass a claim for proceeds of a life-insurance policy. These holdings also accord with our pre-*Great-West* interpretation of § 502(a)(3). *See Sage v. Automation, Inc. Pension Plan & Trust,* 845 F.2d 885, 888 n. 2 (10th Cir. 1988) (punitive damages not an appropriate form of equitable relief); *Lafoy v. HMO Colo.,* 988 F.2d 97, 99-101 (10th Cir. 1993) (compensatory damages not equitable).

The claims here mirror those in *Great-West, Millsap*, and *Callery*. The Linds are seeking compensatory damages for restitution of lost wages, exacerbation of Mr. Lind's medical condition, and pain and suffering, as well as punitive damages. These claims do not seek "to restore to the plaintiff particular funds or property in the defendant's possession," but rather "to impose personal liability." *Great-West*, 534 U.S. at 214. As such, they fall squarely within the category of legal remedies and cannot be entertained in this action under § 502(a)(3).

This is not to say that the Linds, or similarly situated individuals, are entirely without remedy. Had the Linds paid for the Provigil out of pocket, they could have then sued for reimbursement or a reinstatement of coverage. *Callery* suggests that, under some circumstances, policyholders might also have an actionable claim for the refund of insurance premiums. *Callery*, 392 F.3d at 406.

But the claims appellants wished to raise in their proposed amended complaint are entirely legal in nature, and thus are not actionable under the statute.

## IV. Conclusion

The Linds' original claims are entirely preempted by ERISA, and we **AFFIRM** their dismissal by the district court. Because appellants offered no new, non-frivolous claims, we **AFFIRM** the district court's denial of leave to amend the complaint.