**F I L E D**

<u>PUBLISH</u>

**August 28, 2007**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

AUNDRA ANDERSON,

     Plaintiff-Appellant,

v.

KIMBERLY LOHMAN SUITERS, also
known as Kimberly Lohman, individually
and as an employee of KOCO-TV;
OHIO/OKLAHOMA HEARST-
ARGYLE TELEVISION, INC., a Nevada
corporation doing business as KOCO-TV,

     Defendants-Appellees.

and

DON BLAKE, individually and as a state
actor police officer for the City of
Norman, Oklahoma, a municipal
corporation; JOHN DOE; JANE DOE;
and other unknown persons having
responsibility or involvement in the
circumstances of the violation of the
federal civil rights and/or privacy rights of
the Plaintiff, including other state actors,
and/or private persons acting in concert,

     Defendants.

No. 06-6134

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. CIV-05-729-HE)**

Micheal Salem of Salem Law Office, Norman, Oklahoma, for Plaintiff-Appellant.

David A. Schultz of Levine, Sullivan, Koch & Schultz, New York, New York (Michael Berry of Levine, Sullivan, Koch & Schultz, New York, New York; Robert D. Nelon and Jon Epstein of Hall, Estill, Hardwick, Gable, Golden and Nelson, Oklahoma City, Oklahoma; Jonathan Donnellan and Kristina Findikyan, of Counsel, The Hearst Corporation, New York, New York, with him on the brief) for Defendants-Appellees.

---

Before **BRISCOE, HARTZ,** and **GORSUCH**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

---

Aundra Anderson appeals several district court rulings in this action brought pursuant to 42 U.S.C. § 1983 and Oklahoma state tort law. She had sued Kimberly Lohman, a reporter from local television station KOCO-TV ("KOCO"), and the company that owns and operates KOCO (Ohio/Oklahoma Hearst-Argyle Television, Inc.) (hereinafter "the media defendants"), along with Officer Don Blake of the Norman Police Department. Anderson appeals 1) the district court's order partially granting the media defendants' motion to dismiss by dismissing her federal right to privacy and state intrusion upon seclusion claims, and 2) the district court's order granting the media defendants' motion for summary judgment on her publication of private facts claim. She contends the district court erred in concluding that the media defendants were not state actors, and in concluding that her allegations and proffered evidence failed to support her state law tort claims against them. Additionally, she challenges the district court's denial of leave to amend her complaint to add claims against the media defendants for

-2-

promissory estoppel and tortious or malicious interference with a contract. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I.

Anderson alleges that she was raped by her estranged husband while she was unconscious. Anderson did not know of the rape until June, 2003, when she found a videotape of the incident. Anderson gave the videotape to Officer Blake and agreed to press charges after Blake promised that the videotape would be kept confidential and would be used only for law enforcement purposes. Anderson alleges that Blake told her that the only people who would see the tape would be himself, his partner, a judge, and a jury.

Before any charges had been filed in Anderson's case, Blake gave an interview to Lohman about Anderson's allegations. By this time, Anderson's husband had already been arrested on other sexual assault charges involving other alleged victims. Blake showed Lohman the videotape, and Lohman asked if she could record it to obtain a "head shot" of the alleged perpetrator. Aplt. App. at 336. Blake contends that he agreed to allow Lohman to record and display the videotape's contents on the air, so long as the broadcast was limited to a view of the perpetrator's face and was "tasteful." Id. at 337. Lohman promised Blake she would only use a view of the perpetrator's face in her report.

Anderson alleges that, before the news segment aired, Blake contacted her by telephone and said that he wanted her to speak with Lohman. Anderson replied that she did not want to talk to the press, but Blake put Lohman on the telephone anyway.

Anderson refused to answer most of Lohman's questions. During their conversation, Lohman told Anderson that she had viewed the videotape. Anderson alleges that she never authorized Lohman to view or use the videotape in any way. During the 10:00 p.m. newscast of July 3, 2003, KOCO aired Lohman's story about Anderson's allegations, including excerpts from the videotape.

Several days after the broadcast, charges were filed against Anderson's husband for crimes committed against Anderson. After the July 3rd KOCO broadcast, Anderson refused to cooperate with the district attorney's office, and the charges involving Anderson were eventually dropped. Anderson then filed this § 1983 action against Blake and the media defendants. Anderson alleged that all of the defendants had violated her federal constitutional right to privacy in the videotape. She also asserted that the media defendants had invaded her privacy rights under Oklahoma tort law.[1]

The district court denied Blake's motion to dismiss based on qualified immunity, which we affirmed. See Anderson v. Blake, 469 F.3d 910 (10th Cir. 2006).[2] As for the

---

[1] Anderson originally filed suit against the City of Norman as well, but the City was dismissed from the case because it turned over to Anderson all copies of the videotape that it possessed, which was the sole relief that Anderson sought against the City.

[2] Anderson contends that our 2006 decision controls the result in this separate appeal. The previous panel, however, did not reach the issues regarding state action that form the core of this appeal because there was no dispute that Blake, as a police officer, was a state actor. While Anderson points to language in the 2006 decision stating that the complaint's allegations "adequately support an inference of an affirmative link" between Blake's conduct "and any constitutional violation caused by the reporter's decision to broadcast the tape," Anderson, 469 F.3d at 917, it is clear that the issue of state action was not before the panel.

claims against the media defendants, the district court granted their motion to dismiss pursuant to Rule 12(b)(6) as to Anderson's right to privacy and intrusion upon seclusion claims, but denied their motion to dismiss as to Anderson's publication of private facts claim. Subsequently, the district court granted the media defendants summary judgment on Anderson's publication of private facts claim. The district court also denied Anderson's request to amend her complaint to add claims against the media defendants for promissory estoppel and tortious or malicious interference with a contract. After the district court certified its summary judgment order as a final judgment under Rule 54(b),[3] Anderson filed the instant appeal. Anderson contends that the district court erred by dismissing her right to privacy and intrusion upon seclusion claims against the media defendants, by granting the media defendants' motion for summary judgment on her publication of private facts claim asserted against the media defendants, and by denying her motion to amend her complaint against them.

## II.

### A. The Media Defendants' Motion to Dismiss

We first review the district court's order partially granting the media defendants' motion to dismiss pursuant to Rule 12(b)(6) as to Anderson's right to privacy and intrusion upon seclusion claims. We review the district court's order de novo and apply the same standard as the district court. Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir.

---

[3] At that point in the litigation, there was a remaining unadjudicated § 1983 claim against Blake.

2006). Rule 12(b)(6) provides for dismissal of a plaintiff's claims for "failure to state a claim upon which relief can be granted . . . ." We accept as true all well-pleaded factual allegations and view them in the light most favorable to Anderson, the nonmoving party. Moore, 438 F.3d at 1039. "We may uphold the grant of a motion to dismiss if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the non-moving party, the complaint does not contain 'enough facts to state a claim to relief that is plausible on its face.'" Macarthur v. San Juan County, – F.3d – , 2007 U.S. App. LEXIS 17008, at \*16 (10th Cir. 2007) (quoting Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1968-69 (2007)). As we have explained this new standard for reviewing a motion to dismiss, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, – F.3d – , 2007 U.S. App. LEXIS 16204, at \*10 (10th Cir. 2007).

### 1. Anderson's Federal Right to Privacy Claim

Anderson challenges the district court's dismissal of her right to privacy claim for failing to allege state action. To survive as a claim arising under the federal constitution and § 1983, Anderson's right to privacy claim must allege that the media defendants were state actors. Scott v. Hern, 216 F.3d 897, 906 (10th Cir. 2000). The Supreme Court has explained that the state action doctrine requires that the constitutional deprivation "'be caused by the exercise of some right or privilege created by the State or by a rule of

-6-

conduct imposed by the state or by a person for whom the State is responsible'" and that "'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" Johnson v. Rodrigues, 293 F.3d 1196, 1202 (10th Cir. 2002) (quoting Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982)). The Supreme Court has outlined four tests to determine whether private actors, such as the media defendants, should be considered state actors: "(1) the public function test, (2) the nexus test, (3) the symbiotic relationship test and (4) the joint action test." Id. at 1202-03.

Anderson relies on the joint action test and contends she has satisfied the state action requirement by showing the media defendants acted jointly with Blake, a state actor. Private participants acting jointly with state actors can satisfy the state action requirement if the private party is a "willful participant in joint action with the State or its agents." Id. at 1205 (citations and internal quotation marks omitted). We examine "whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." Id. (citations and internal quotation marks omitted). Anderson argues that the facts alleged in her complaint evince such concerted action by claiming that the media defendants and Blake agreed to misuse Blake's authority to obtain access to and ultimately air the confidential videotape.

Anderson's allegations are inadequate to support her claim that the media defendants acted jointly with Blake to violate Anderson's right to privacy by airing a confidential videotape. Anderson does not allege that the media defendants knew about the confidentiality agreement between Anderson and Blake protecting the videotape's

-7-

contents from disclosure. While Anderson asks us to infer such knowledge, she provides no basis for such an inference. Further, Anderson's complaint fails to allege facts demonstrating a shared purpose by Blake and the media defendants to violate Anderson's constitutional rights. At most, the complaint alleges that the parties had their own, separate goals: Blake wanted to appear on camera, and the media defendants wanted exclusive access to the investigation. See Aplt. App. at 23. Indeed, the complaint specifically disavows a shared law enforcement purpose. Id. at 13.

Anderson also argues that the media defendants became state actors because they agreed with Blake to receive the leaked portions of the videotape and to air them on the nightly news. Without more, a reporter does not become a state actor, however, simply because she has received and published information from a governmental official, as the media defendants did here. Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1271 (10th Cir. 1989). Although Anderson points to the fact that Blake gave the media defendants "exclusive" access to the information, this fact only explains how widely Blake disseminated the information – it does not demonstrate concerted action between Blake and the media defendants. In addition, a prior ride-along with police officers in which KOCO employees participated concerned a different case and did not involve any joint action that could potentially violate Anderson's constitutional rights. Finally, Anderson alleges that KOCO, not Blake or any other state actor, retained editorial control over the use of the videotape – indeed, she asserts that the media defendants aired *more* of the videotape than Blake had wanted.

-8-

Blake's telephone call to Anderson, on Lohman's behalf, to encourage her to speak with Lohman displays a closer working relationship between Blake and the media defendants than Anderson's other allegations. While this fact may show that Blake and the media defendants acted jointly to secure Anderson's cooperation for an interview, it does not show joint action to violate Anderson's constitutional rights by airing sexually explicit portions of a videotape. In fact, Anderson's complaint alleges that Blake had already permitted the viewing and taping of the videotape by the media defendants prior to the telephone interview because Lohman told Anderson that she had "seen the entire video tape." Aplt. App. at 20.

Anderson also cites to Berger v. Hanlon, 129 F.3d 505 (9th Cir. 1997), vacated and remanded by, 526 U.S. 808 (1999), judgment reinstated by 188 F.3d 1155 (9th Cir. 1999), as authority in support of her joint action argument. In that case, the Cable News Network ("CNN") filmed federal agents as they executed a search warrant of a Montana ranch. Id. at 508-09. When the rancher sued the CNN team for violating his constitutional rights, the Ninth Circuit concluded that the members of the CNN team participating in the search were state actors. Id. at 514-16. Anderson argues that Berger is support for reaching a similar result in her case because one fact that led the Ninth Circuit to its conclusion was that "the federal entities shared confidential information with the media." Id. at 515.

While the sharing of confidential information makes Berger and the instant case superficially similar, Berger's facts suggested a much greater degree of cooperation

-9-

between government officials and reporters than is present in Anderson's case. The federal agents in Berger "planned and executed the search in a manner designed to enhance its entertainment, rather than its law enforcement value, by engaging in, for example, conversations with [the rancher] for the purpose of providing interesting soundbites, and to portray themselves as tough, yet caring investigators, rather than to further their investigation." Id. By these actions, the federal agents became joint participants in shaping the content of CNN's coverage, transforming the CNN team into state actors. The most that Anderson alleges, however, is that Blake *allowed* the media defendants to film the videotape's contents so that the *media defendants*, not Blake, could produce a head shot for the evening news. Rather than support Anderson's argument that the media defendants became state actors for purposes of § 1983 because Blake and the media defendants acted in concert, Berger highlights what is missing in this case: facts alleging joint action between Blake and the media defendants in airing the videotape. We therefore agree with the district court's conclusion that Anderson's factual allegations regarding Blake's involvement in the ultimate publication of portions of the videotape by the media defendants were insufficient to treat the media defendants as state actors.

*2. Anderson's Intrusion Upon Seclusion Claim*

Turning briefly to the district court's dismissal of Anderson's intrusion upon seclusion claim, Anderson provides no support in her opening brief for her contention that the district court erred in dismissing this claim. See Aplt. Opening Br. at 33-35. She cites cases which set forth the elements of an "intrusion" claim, but fails to tie those cases

to the facts of her case.  The only other reference to her intrusion claim is in her

"Statement of the Issues for Review," where she states:

> The district court erred in dismissing a state claim for "intrusion into
> seclusion" because release of the entire rape video to the KOCO defendants
> was an intentional intrusion into a private matter highly offensive to a
> reasonable person. . . .  The violations of federal privacy and the state
> "intrusion into seclusion" were completed when Blake released the video to
> the KOCO defendants.

Id. at 4-5.  These arguments are not only untethered to any legal citation, but also are too

conclusory to permit judicial review.  See Am. Airlines v. Christensen, 967 F.2d 410, 415

n.8 (10th Cir. 1992) ("It is insufficient merely to state in one's brief that one is appealing

an adverse ruling below without advancing reasoned argument as to the grounds for the

appeal." (citing Fed. R. App. P. 28(a)(4))).  We therefore decline to address any claimed

issue involving the district court's dismissal of Anderson's intrusion upon seclusion

claim.

*B.  The Media Defendants' Motion for Summary Judgment*

We next turn to the district court's grant of summary judgment for the media

defendants on Anderson's publication of private facts claim.  We review the district

court's grant of summary judgment de novo under the same standard that the district court

applied.  Camuglia v. City of Albuquerque, 448 F.3d 1214, 1218 (10th Cir. 2006).

"Ordinarily, the district court must view the record in the light most favorable to the party

opposing summary judgment and should grant summary judgment only when there is no

genuine dispute over a material fact and the moving party is entitled to judgment as a

matter of law." Id. (citations and internal quotation marks omitted).

Anderson argues that the district court incorrectly granted the media defendants summary judgment on her publication of private facts claim. Anderson alleges in her publication of private facts claim that the media defendants tortiously published private facts about her when they aired the videotape. We agree with the district court that Anderson failed to create a genuine issue of material fact as to this claim because the material published was substantially related to a matter of legitimate public concern.

Oklahoma has adopted the Restatement of Torts' definition of publication of private facts:

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that
>
> (a) would be highly offensive to a reasonable person, and
>
> (b) is not of legitimate concern to the public.

Restatement (Second) of Torts § 652D (1977); McCormack v. Okla. Publ. Co., 613 P.2d 737, 740 (Okla. 1980). The requirement that the published private facts not be of legitimate public concern is both an element of the common law tort and a constitutional limitation imposed by the First Amendment. See Gilbert v. Med. Econ. Co., 665 F.2d 305, 307-08 (10th Cir. 1981); Restatement (Second) of Torts § 652D cmt. d; see also Alvarado v. KOB-TV, L.L.C., – F.3d – , 2007 U.S. App. LEXIS 16720, at *22 n.9 (10th Cir. 2007) ("However, we observe that state law now defines torts involving publication to take into account First Amendment restrictions announced by the Supreme Court.").

This limitation on the publication-of-private-facts tort protects "the right of the press to disseminate newsworthy information to the public."  Gilbert, 665 F.2d at 307.  A matter can be of legitimate public concern even though it concerns private individuals, like Anderson, "'who have not sought publicity or consented to it, but through their own conduct or otherwise have become a legitimate subject of public interest.'"  Id. (quoting Restatement (Second) of Torts § 652D cmt. f (1977)).  But there are limits as well to what matters are of legitimate public concern.  In Gilbert, we concluded that there are some facts which are beyond the sphere of legitimate public concern:

> Even where certain matters are clearly within the protected sphere of legitimate public interest, some private facts about an individual may lie outside that sphere. . . . [T]o properly balance freedom of the press against the right of privacy, every private fact disclosed in an otherwise truthful, newsworthy publication *must have some substantial relevance to a matter of legitimate public interest*.

Id. at 308 (emphasis added); cf. Alvarado, 2007 U.S. App. LEXIS 16720, at *28 (reiterating the substantial relevance standard).

"Although application of the newsworthiness standard to undisputed facts may well present a jury question in some cases," we can affirm the district court if objective and reasonable minds could not differ in concluding that the broadcast portion of the videotape is a matter of legitimate public interest.  Gilbert, 665 F.2d at 309.  The media defendants have satisfied this inquiry because the videotape was substantially relevant to a matter of legitimate public interest: the prosecution of Anderson's husband, a local attorney, for rape, as well as for other sexual assault charges involving multiple victims.

-13-

By the time the media defendants aired the excerpts from the videotape, Anderson's husband had already been arrested for at least one other rape. Aplt. App. at 336. Anderson's allegation that she had been raped by her husband increased the likelihood that there was support for the other pending charges against him. Information concerning the possible guilt or innocence of a person charged with a crime is a classic example of a matter of legitimate public concern. See Restatement (Second) of Torts § 652D cmt. h (1977) ("[T]he life history of one accused of murder, together with such heretofore private facts as may throw some light upon what kind of person he is, his possible guilt or innocence, or his reasons for committing the crime, are a matter of legitimate public interest."); cf. Cox Broad. Corp. v. Cohn, 420 U.S. 469, 492 (1975). By airing the videotape, the media defendants heightened the report's impact and credibility by demonstrating that the allegations rested on a firm evidentiary foundation and that the reporter had access to reliable information. Gilbert, 665 F.2d at 308.

Anderson raises two arguments which challenge the videotape's substantial relevance to a matter of legitimate public concern. First, Anderson argues the videotape was highly personal and intimate in nature. While the sensitive nature of the material might make its disclosure highly offensive to a reasonable person, that does not make the videotape any less newsworthy so long as the material as a whole is substantially relevant to a legitimate matter of public concern. Alvarado, 2007 U.S. App. LEXIS 16720, at *28 (noting that "[o]ther courts also appear to give 'public interest' status to news material on an aggregate basis, rather than itemizing what in the news report would qualify and what

-14-

could remain private" (citing Ross v. Midwest Commc'ns, Inc., 870 F.2d 271, 274-75 (5th Cir. 1989))).  In support of her argument that the videotape is too personal and intimate to have any relevance to a matter of public concern, Anderson highlights the following example from the Restatement: "[W]hen a photograph is taken without the plaintiff's consent in a private place . . . the plaintiff's appearance that is made public when the picture appears in a newspaper is still a private matter, and his privacy is invaded."  Restatement (Second) of Torts § 652D cmt. b (1977).  This illustration, however, does not refer to the legitimate public concern inquiry because the Restatement only uses the illustration to distinguish a *private* fact (such as a photograph of a person in a "private place"), from a *public* fact (such as a photograph of a person "walking down the public street"), without addressing the legitimate public concern requirement.  See id.

By holding that the content of the media defendants' newscast was substantially relevant to a matter of legitimate public interest, we do not imply that members of the media may escape any liability for publication of private facts whenever the subject of the publication is an alleged perpetrator of a crime.  Some facts about the victim of an alleged crime will be too tangential to the prosecution of the perpetrator to be substantially relevant to a matter of legitimate public interest.  Wherever that line may be drawn in other cases, the facts that the media defendants published in this case, for the reasons stated above, are substantially relevant to the alleged criminal activities of Anderson's husband, a matter of legitimate public concern.  The focus of the news broadcast was on the perpetrator, not the victim.  And as even Anderson acknowledges in her brief, she was

-15-

never identified by name, and the excerpted portion of the videotape was limited to a few movements of the alleged attacker's naked body without disclosing the sexual acts in great detail; only Anderson's feet and calves were clearly visible, and they bore no identifying characteristics. Aplt. Opening Br. at 11. We can understand entirely why Anderson found the public display of any portion of the tape highly distressing, perhaps especially after having received Blake's assurance that it would be viewed by only himself, his partner, a judge, and a jury. But it is also difficult to see how the broadcast at issue could be said to have *no* legitimate public interest – the test we must apply. Had the broadcast gone further in invading Anderson's privacy, rather than focusing on her estranged husband's wrongdoing, we would have had a very different case. But the simple fact is that this was a broadcast about a rapist, not a rape victim, and the legitimate privacy interests of the two could not be more different.

Anderson also argues that a declaration by Prof. Melinda Levin of the University of North Texas – reporting her conclusion that the videotape was unnewsworthy – creates a genuine issue for trial. We disagree for two reasons. First, Prof. Levin opines on whether the news broadcast was "newsworthy" or an issue of "public concern." But this determination, based on the undisputed facts in the record, is the ultimate question of law before us. While expert witnesses may testify as to the ultimate matter at issue, Fed. R. Evid. 704(a), this refers to testimony on ultimate facts; testimony on ultimate questions of law, i.e., legal opinions or conclusions, is not favored. See, e.g., Specht v. Jensen, 853 F.2d 805, 808 (10th Cir. 1988). Second, Levin concludes that the videotape is not

-16-

newsworthy because it exploits Anderson and adds to her victimization. Even if true, Levin's declaration attacks not the *newsworthiness* of the video excerpts, but the media defendants' *editorial judgment* in airing them. Editorial judgment is a matter that courts have generally left to the press. See Sussman v. ABC, 186 F.3d 1200, 1202 (9th Cir. 1999) (agreeing that "newsworthiness . . . is evaluated with a high degree of deference to editorial judgment") (citation and internal quotation marks omitted); Gilbert, 665 F.2d at 308 (expressing concern over preserving "the breathing space needed by the press to properly exercise effective editorial judgment"). While Levin's critique of the broadcast may be relevant to whether it would be highly offensive to a reasonable person, her opinion as to the video excerpt's substantial relevance to a legitimate matter of public concern impermissibly addresses the ultimate legal question.

## C. Anderson's Motion to Amend

Anderson moved to amend her complaint against the media defendants to add a promissory estoppel claim and a tortious or malicious interference with a contract claim. The district court denied her motion, concluding that the new allegations were an effort to avoid the constitutional limitations on her claims.

We review the denial of a motion to amend for abuse of discretion. Tool Box, Inc. v. Ogden City Corp., 419 F.3d 1084, 1086-87 (10th Cir. 2005). Rule 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires." A district court may refuse to allow amendment if it would be futile. Lind v. Aetna Health, Inc., 466 F.3d 1195, 1199 (10th Cir. 2006). "'A proposed amendment is futile if the

-17-

complaint, as amended, would be subject to dismissal.'" Id. (quoting Bradley v. J.E. Val-Mejias, 379 F.3d 892, 901 (10th Cir. 2004)).

Anderson's proposed amendments would be futile because the two new claims would be subject to dismissal. Anderson's interference claim alleges that she and Blake had an agreement to keep the videotape confidential and that the media defendants induced Blake to breach that agreement. In Oklahoma, tortious or malicious interference with a contract has the following elements: (1) "a business or contractual right with which there was interference"; (2) "the interference was malicious and wrongful, and that such interference was neither justified, privileged nor excusable" (emphases omitted); and (3) "damage was proximately sustained as a result of the complained-of interference." Morrow Dev. Corp. v. Am. Bank & Trust Co., 875 P.2d 411, 416 (Okla. 1994). Anderson's claim would fail for lack of any allegation of malice, which requires "the intentional performance of a wrongful act without justification or excuse." Id. Anderson does not allege that the media defendants intentionally interfered with the alleged agreement between Anderson and Blake to keep the videotape confidential. Indeed, Anderson does not even allege that the media defendants knew that the agreement existed. While Anderson believes that knowledge of an agreement can be inferred from the videotape's sensitive nature and various state and local policies preventing the public disclosure of confidential material, this evidence may establish, at most, that the media defendants knew that the videotape was protected by state and local law, not that it was protected by an agreement between Blake and Anderson.

-18-

Anderson's promissory estoppel claim seeks recovery for the media defendants' alleged violation of an agreement between them and Blake to use only a "head shot" of the attacker on the evening news. Oklahoma has adopted the Restatement (Second) of Contracts (1981) version of the cause of action, which provides:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

§ 90(1); Barber v. Barber, 77 P.3d 576, 579 (Okla. 2003) (recognizing Oklahoma's adoption of § 90). From this, Oklahoma has distilled the following four elements of promissory estoppel: (1) "a clear and unambiguous promise"; (2) "foreseeability by the promisor that the promisee would rely upon it"; (3) "reasonable reliance upon the promise to the promisee's detriment"; and (4) "hardship or unfairness can be avoided only by the promise's enforcement." Barber, 77 P.3d at 579.

Anderson's proposed promissory estoppel claim fails because she only alleges emotional distress damages. Oklahoma courts have held that a claim seeking only damages for emotional distress fails in the absence of physical injury. Seidenbach's, Inc. v. Williams, 361 P.2d 185, 187 (Okla. 1961) ("It is the settled law in this jurisdiction that mental anguish of itself cannot be treated as an independent ground of damages so as to enable a person to maintain an action for that injury alone.") (citation and internal quotation marks omitted). Here, Anderson only seeks damages for emotional distress without any allegation of physical injury: "Plaintiff has been damaged by the actions of

-19-

the Defendants, become despondent, suffered emotional distress, embarrassment, sleeplessness, anxiety and concern for herself and her children and is entitled to damages against all relevant defendants." Aplt. App. at 26. As Anderson's promissory estoppel claim would be subject to dismissal, her request to amend to raise that claim would be futile.

III.

The district court's rulings are AFFIRMED. Anderson's motion for leave to submit a CD-ROM of the broadcast under seal is GRANTED.