**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 7, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

M. NORMAN ANDERSON;
BERNARD C. BAIER, Baier Family
Interests; HAROLD S. CARPENTER,
Carpenter Family Interests; LEE S.
CHAPMAN, Chapman Family
Interests; CLARK A. COLBY, Colby
Family Interests; MILTON E.
DAVEY; KEITH DENNER; JOE
FIEDLER, Joe Fiedler Family
Interests; VIRGINIA R. FIEDLER;
WILLIAM R. FIEDLER, Virginia and
William Fiedler Family Interests;
JERRY V. FLATT; SAMUEL A.
FRANCIS, Francis Family Interests;
LOU GIARDINA, Giardina Family
Interests; KENNETH L. HAACK,
Haack Family Interests; ARMON
HELVIG, Helvig Family Interests;
JEFF HODDE; STEVEN M.
LINDELL, Lindell Family Interests;
JOHN LIPEROTE; MARGARET
LIPEROTE, Liperote Family Interests;
PAUL F. LOSTROH, MARY ANN
MICHAEL; TOBY MICHAEL; CLIFF
PHELPS; DON ROGERS; DEBORAH
A. ROSETH; RICK SHENEMAN;
MATHEW L. T. WALDOR; DON
WHITE,

  Plaintiffs-Appellants,

and

EDWARD J. MICHAEL,

No. 07-2132

Plaintiff,

v.

MERRILL LYNCH PIERCE FENNER
& SMITH, INC., a Delaware
Corporation,

     Defendants-Appellees.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CIV-06-1155-BB)**

---

Clinton W. Marrs, Vogel Campbell & Blueher, P.C., Albuquerque, New Mexico, (Michael W. Wile, Vogel Campbell & Blueher, P.C., Albuquerque, New Mexico; Charles A. Pharris and James L. Rasmussen, Keleher & McLeod, P.A., Albuquerque, New Mexico, with him on the briefs), for Plaintiffs-Appellants.

Charles A. Gall (Joel R. Sharp with him on the brief), Hunton & Williams, LLP, Dallas, Texas, for Defendant-Appellee.

---

Before **HENRY,** Chief Circuit Judge**, BRISCOE,** and **HOLMES**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

---

     Plaintiffs/Appellants ("Plaintiffs") are approximately 120 shareholders of

Solv-Ex, a now-defunct New Mexico corporation. They brought this class action

lawsuit against Defendant/Appellee Merrill Lynch, Pierce, Fenner, & Smith, Inc.

("Merrill Lynch") in New Mexico state court, alleging fourteen separate counts

under New Mexico law. Merrill Lynch removed the case to the United States

2

District Court for the District of New Mexico and then moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, citing the court to the Securities Litigation Uniform Standards Act of 1998, Pub. L. No. 105-353, 112 Stat. 3227 (1998) (codified at 15 U.S.C. §§ 77p, 78bb(f)). The district court granted the motion to dismiss and denied Plaintiffs leave to amend their Complaint. We have jurisdiction under 28 U.S.C. § 1291, and affirm.

I.

A.     *Statutory background*

In 1995, Congress responded to perceived abuses of federal securities class action litigation by passing the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. No. 104-67, 109 Stat. 737 (1995) (codified at 15 U.S.C. §§ 77z-1, 78u-4). See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 547 U.S. 71, 81 (2006). The PSLRA imposed certain limits on such litigation, including limits on recoverable damages and attorneys' fees, a "safe harbor" for forward-looking statements, mandated sanctions for frivolous litigation, a stay of discovery pending any motion to dismiss, and heightened pleading requirements. Id. at 81-82 (citing 15 U.S.C. § 78u-4; Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 345 (2005)). These limits on federal securities class actions, however, had an unintended consequence:

> [They] prompted at least some members of the plaintiffs' bar to
> avoid the federal forum altogether. Rather than face the obstacles set
> in their path by the [PSLRA], plaintiffs and their representatives

3

began bringing class actions under state law, often in state court. The evidence presented to Congress during a 1997 hearing to evaluate the effects of the [PSLRA] suggested that this phenomenon was a novel one; state-court litigation of class actions involving nationally traded securities had previously been rare.

Id. at 82 (citing H.R. Rep. No. 105-640, at 10 (1998); S. Rep. No. 105-182, at 3-4 (1998)); see also H.R. Rep. No. 105-803, at 13-15 (1998) (Conf. Rep.).

The unanticipated shift in securities class actions from federal to state court, and from federal to state law, created several problems. As the Senate Report explained:

Disparate, and shifting, state litigation procedures may expose issuers to the potential for significant liability that cannot easily be evaluated in advance, or assessed when a statement is made. At a time when we are increasingly experiencing and encouraging national and international securities offerings and listings, and expending great effort to rationalize and streamline our securities markets, this fragmentation of investor remedies potentially imposes costs that outweigh the benefits. Rather than permit or foster fragmentation of our national system of securities litigation, we should give due consideration to the benefits flowing to investors from a uniform national approach.

S. Rep. No. 105-182, at 3 (citation omitted). In addition, this shift to state court re-introduced many of the abuses that the PSLRA had attempted to mitigate, allowing plaintiffs to avoid the comparatively stringent federal pleading requirements, federal discovery stays, and other substantive and procedural provisions of the PSLRA. See id.

Congress responded by passing the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), Pub. L. No. 105-353, 112 Stat. 3227 (1998). SLUSA

4

provides for preclusion of certain securities class actions brought under state law:

(f) Limitations on remedies

(1) Class action limitations

No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging--

(A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or

(B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1); see also Potter v. James Inv. Fund, 483 F. Supp. 2d 692, 696 (S.D. Ill. 2007) ("Thus, an action will be dismissed under SLUSA if it is (1) a 'covered class action,' (2) that is based on a state law, (3) alleging a misrepresentation or omission of a material fact or use of any manipulative or deceptive device or contrivance (4) 'in connection with' the purchase or sale of a covered security, and all of these elements must be present for preclusion to apply.").[1,2]  This is not a "preemption provision," but rather a "preclusion

[1] "A 'covered class action' is a lawsuit in which damages are sought on behalf of more than 50 people." Dabit, 547 U.S. at 83 (citing 15 U.S.C. § 78bb(f)(5)(B)).  "A 'covered security' is one traded nationally and listed on a regulated national exchange."  Id. (citing 15 U.S.C. § 78bb(f)(5)(E)).

[2] The statutory provisions cited herein are SLUSA's amendments to the Securities Exchange Act of 1934.  SLUSA "amends the 1933 Act and the 1934

(continued...)

5

provision": it "does not itself displace state law with federal law but makes some state-law claims nonactionable through the class action device in federal as well as state court."  Kircher v. Putnam Funds Trust, 547 U.S. 633, 637 n.1 (2006).

Moreover, SLUSA provides federal courts with removal jurisdiction over class actions that are precluded under § 78bb(f)(1):

> (2) Removal of covered class actions
>
> Any covered class action brought in any State court involving a covered security, as set forth in paragraph (1), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to paragraph (1).

15 U.S.C. § 78bb(f)(2).  If, after removal, the federal court determines that SLUSA does not preclude the class action, then the federal court must remand it to state court:

> (3) Preservation of certain actions–
>
> * * *
>
> (D) Remand of removed actions
>
> In an action that has been removed from a State court pursuant to paragraph (2), if the Federal court

---

2(...continued)
Act in substantially identical ways."  Dabit, 547 U.S. at 82 n.6.  Compare 15 U.S.C. § 77p (codifying SLUSA's amendments to the Securities Act of 1933), with 15 U.S.C. § 78bb(f) (codifying SLUSA's amendments to the Securities Exchange Act of 1934).  For convenience, and because all parties appear to agree that the amendments to the Securities Exchange Act of 1934 are more pertinent here, we will continue to cite only to those provisions unless otherwise noted.  See Dabit, 547 U.S. at 82 n.6 ("For convenience and because they are more pertinent here, we quote the amendments to the 1934 Act.").

determines that the action may be maintained in State court pursuant to this subsection, the Federal court shall remand such action to such State court.

15 U.S.C. § 78bb(f)(3)(D). Under these provisions, the jurisdiction conferred upon the federal courts by SLUSA is, in essence, limited to determining whether 15 U.S.C. § 78bb(f)(1) precludes the plaintiffs' claims:

> Once removal jurisdiction under [15 U.S.C. § 78bb(f)(2)] is understood to be restricted to precluded actions defined by [§ 78bb(f)(1)], a motion to remand claiming the action is not precluded must be seen as posing a jurisdictional issue. If the action is precluded, neither the District Court nor the state court may entertain it, and the proper course is to dismiss. If the action is not precluded, the federal court likewise has no jurisdiction to touch the case on the merits, and the proper course is to remand to the state court that can deal with it. In either event, . . . the district court's order comes because its adjudicatory power has been exercised and its work is done.

Kircher, 547 U.S. at 643-44.

B.    *Procedural and factual background*

Solv-Ex is a defunct New Mexico corporation whose stock was previously listed on the NASDAQ exchange. John S. Rendall, who is not a party to this action, founded Solv-Ex in 1980 to develop processes for the extraction of bitumen from oil sands. During all relevant time periods, Mr. Rendall was the chairman, CEO, and largest individual shareholder of Solv-Ex. In March 1997, Merrill Lynch made a personal loan to Mr. Rendall for $2 million. As part of the loan agreement, Mr. Rendall moved an existing $2 million margin account loan to Merrill Lynch, and he agreed to secure the $4 million in total loan amounts with

7

2.61 million shares of his Solv-Ex common stock, which represented more than ten percent of the issued and outstanding shares of Solv-Ex common stock. In April 1997, barely a month later, Merrill Lynch informed Mr. Rendall that it was demanding payment of the entire $4 million debt, and that it intended to sell 1.1 million of his Solv-Ex shares if he could not pay. Starting in May 1997, Merrill Lynch sold 634,100 of Mr. Rendall's shares on the open market. During this time period, the share price of Solv-Ex common stock plunged from $13 on April 1, 1997, to slightly under $4 on June 30, 1997. In July 1997, Solv-Ex filed a petition for bankruptcy, and in September 1997, the NASDAQ de-listed its stock.[3] Solv-Ex was, and remains, dormant.

On October 24, 2006, Plaintiffs filed the instant action against Merrill Lynch in New Mexico state court. Plaintiffs alleged that Martin Zweig and his related entities (the "Zweig Entities") had maintained prime brokerage relationships with Merrill Lynch during the time that Mr. Rendall had pledged his shares to Merrill Lynch as security for the loans. According to Plaintiffs, the Zweig Entities engaged in short-selling of Solv-Ex stock throughout 1996 and 1997, using Merrill Lynch prime brokerage accounts, often without closing out their positions within UPC Rule 71's ten-day closeout period. The Complaint

---

[3] Plaintiffs' Complaint describes, in detail, several of the problems that Solv-Ex faced in 1996 and 1997, including a wave of bad publicity, federal criminal investigations, and lawsuits. These details are largely irrelevant to the instant appeal, so we will not discuss them with additional specificity.

8

alleged fourteen separate counts against Merrill Lynch. In Count I, Plaintiffs requested an equitable bill of discovery, permitting them to conduct depositions and compel document production in order to determine whether Merrill Lynch and/or other parties acted inappropriately in short-selling Solv-Ex stock. In the alternative, in Counts II through XIV of the Complaint, Plaintiffs set forth claims against Merrill Lynch under New Mexico common and statutory law, alleging breach of fiduciary duty (Count II), aiding and abetting tortious action (Count III), oppressive conduct (Count IV), prima facie tort (Count V), civil conspiracy (Count VI), negligence (Count VII), violations of the New Mexico Securities Act of 1986 (Counts VIII and IX), violations of the New Mexico Unfair Practices Act (Count X), negligent supervision (Count XI), control person liability (Count XII), respondeat superior (Count XIII), and punitive damages (Count XIV). The essence of the claims was that Merrill Lynch induced Mr. Rendall to open the margin loan account, secured by the 2.61 million shares of Solv-Ex, and then liquidated those shares, flooding the market and driving down the price of Solv-Ex stock.

Merrill Lynch removed the action to the United States District Court for the District of New Mexico. As its jurisdictional bases for removal, Merrill Lynch relied upon 28 U.S.C. § 1441, as well as SLUSA, 15 U.S.C. §§ 77p(c), 78bb(f)(2). Merrill Lynch then filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, relying upon SLUSA, 15 U.S.C. § 78bb(f)(1).

9

On April 4, 2007, the district court granted the motion to dismiss, holding that SLUSA barred all of Plaintiffs' claims. The district court held that Plaintiffs' claims were a "covered class action" under SLUSA, despite Plaintiffs' attempt to seek an equitable bill of discovery as an alternative remedy. The district court also rejected Plaintiffs' request for leave to amend their Complaint to assert a derivative action against Merrill Lynch on behalf of Solv-Ex. The district court explained that "Plaintiffs have not attached a proposed amended complaint to their Response as is required by this District's local rules." Dist. Ct. Op., ROA, Vol. I, at 171 (citing D.N.M. Civ. R. 15.1). In addition, Plaintiffs did not "explain how they will be able to meet the requirements for filing an exclusively derivative action under Rule 23.1 of the Federal Rules of Civil Procedure," or "offer any enlightenment on how they could pursue the required 'exclusive derivative action' on these facts." Id. The district court further noted that New Mexico law does not permit a shareholder "to recover for injuries done to the corporation." Id. (citing Marchman v. NCNB Tex. Nat'l Bank, 898 P.2d 709 (N.M. 1995)).

The district court then held that SLUSA barred Plaintiffs' claims. The district court rejected Plaintiffs' argument that SLUSA only precluded claims having "elements identical to those required for federal securities fraud," such as scienter. Id. at 172. The district court explained that "it is not necessary that the state law claim line up exactly with the requirements of federal securities statutes

10

to be barred by SLUSA." Id. Plaintiffs made several allegations in their Complaint regarding "misrepresentation[s] or omission[s] of a material fact" and "manipulative or deceptive device[s]," "in connection with the purchase or sale of a covered security," and the district court held that this was all that SLUSA required. Id. at 173.

On appeal, Plaintiffs argue that the district court erred in determining that SLUSA precluded their claims. Alternatively, they argue that the district court should have granted them leave to amend their Complaint.

II.

A.    *Plaintiffs' claims under SLUSA*

The district court correctly held that SLUSA precluded Plaintiffs' claims and mandated dismissal. "We review de novo a district court's decision on a Rule 12(b)(6) motion for dismissal for failure to state a claim." Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007). In doing so, "[w]e must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." Id. (citation and internal quotation marks omitted). In addition, in determining whether to grant a motion to dismiss for failure to state a claim, we "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." Id. at 1215 n.2.

The seminal case on the scope of SLUSA is the Supreme Court's 2006

11

decision in <u>Dabit</u>, in which the Court concluded that SLUSA precluded claims by holders—and not just purchasers or sellers—of covered securities. The Court rejected a narrow interpretation of the statutory phrase, "in connection with the purchase or sale of a covered security," 15 U.S.C. § 78bb(f)(1)(A), (B), despite the plaintiffs' argument that those words incorporated the same purchaser-seller requirement into SLUSA that the Court had adopted in <u>Blue Chip Stamps v. Manor Drug Stores</u>, 421 U.S. 723 (1975), for private actions under Rule 10b-5. <u>See</u> <u>Dabit</u>, 547 U.S. at 84-88. The Court explained that the purchaser-seller limitation adopted in <u>Blue Chip Stamps</u> for private actions did not stem from the text of 10b-5, but rather from "policy considerations." <u>Id.</u> at 84 (citing <u>Blue Chip Stamps</u>, 421 U.S. at 737, 749). The Court had "espoused a broad interpretation" when "giv[ing] meaning to the phrase in the context of § 10(b) and Rule 10b-5," and "this broader interpretation of the statutory language comports with the longstanding views of the SEC." <u>Id.</u> at 85. Under the "ordinary principles of statutory construction," therefore, Congress intended to incorporate this broad construction when it incorporated the identical language into SLUSA. <u>Id.</u> at 85-86.

Further, the Court in <u>Dabit</u> based its broad reading of SLUSA on the purpose of statute:

> The presumption that Congress envisioned a broad construction follows not only from ordinary principles of statutory construction but also from the particular concerns that culminated in SLUSA's

12

enactment. A narrow reading of the statute would undercut the effectiveness of the [PSLRA] and thus run contrary to SLUSA's stated purpose, viz., to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of the [PSLRA]. As the Blue Chip Stamps Court observed, class actions brought by holders [(rather than just purchasers or sellers)] pose a special risk of vexatious litigation. It would be odd, to say the least, if SLUSA exempted that particularly troublesome subset of class actions from its pre-emptive sweep.

Id. at 86 (citations and internal quotation marks omitted). A narrow interpretation of SLUSA would "squarely conflict[] with the congressional preference for national standards for securities class action lawsuits involving nationally traded securities." Id. at 86-87 (citation and internal quotation marks omitted). In addition, the Court in Dabit concluded that the general presumption against preemption of state-law causes of action

carries less force here than in other contexts because SLUSA does not actually pre-empt any state cause of action. It simply denies plaintiffs the right to use the class action device to vindicate certain claims. The Act does not deny any individual plaintiff, or indeed any group of fewer than 50 plaintiffs, the right to enforce any state-law cause of action that may exist.

Moreover, the tailored exceptions to SLUSA's pre-emptive command demonstrate that Congress did not by any means act "cavalierly" here. The statute carefully exempts from its operation certain class actions based on the law of the State in which the issuer of the covered security is incorporated, actions brought by a state agency or state pension plan, actions under contracts between issuers and indenture trustees, and derivative actions brought by shareholders on behalf of a corporation. The statute also expressly preserves state jurisdiction over state agency enforcement proceedings. The existence of these carve-outs both evinces congressional sensitivity to state prerogatives in this field and makes it inappropriate for courts to create additional, implied exceptions.

13

<u>Id.</u> at 87-88 (citing 15 U.S.C. § 78bb(f)(3)(A)-(C), (f)(4), (f)(5)(C)).

Plaintiffs' argument in the instant case parallels the argument that the Supreme Court rejected in <u>Dabit</u>.  The essence of Plaintiffs' argument is that, because SLUSA employs language similar to that in Rule 10b-5,[4] SLUSA only precludes state law claims that are "virtually identical" to a federal securities fraud claim under 10b-5—i.e., claims requiring plaintiffs to allege the "essential elements" of scienter and reliance.  Under this standard, Plaintiffs argue, SLUSA does not preclude any of their claims under New Mexico law, because none of their claims allege—or are required to allege—the elements of scienter and reliance.

---

[4] Rule 10b-5 makes it "unlawful for any person":

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5; <u>see also</u> 15 U.S.C. § 78j(b) (making it "unlawful for any person . . . [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors").

14

Plaintiffs are not unique in making this argument, and courts have almost uniformly rejected it as contrary to the structure, intent, and plain language of SLUSA. As the Eleventh Circuit has explained:

> SLUSA amends both the 1933 Act (15 U.S.C. § 77p) and the 1934 Act (15 U.S.C. § 78bb), preempting claims brought under both of those statutes. The sections of SLUSA that amend the 1933 Act track the language of §§ 11 and 12(a)(2), and claims under §§ 11 and 12(a)(2) of the 1933 Act do not require a showing of scienter. Thus, SLUSA preempts some claims—namely, those brought under § 11 or 12(a)(2) of the 1933 Act—that lack a scienter requirement. Accordingly, we cannot accept [the plaintiffs'] contention that scienter is the dispositive factor in determining whether a given lawsuit falls within the scope of SLUSA.

Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 292 F.3d 1334, 1346 (11th Cir. 2002); see also Potter, 483 F. Supp. 2d at 698-703 (conducting a similar textual and structural analysis and reaching the same conclusion); Winne v. Equitable Life Assurance Soc'y of the U.S., 315 F. Supp. 2d 404, 413-15 & n.5 (S.D.N.Y. 2003) (reaching the same conclusion by relying on a similar textual and structural analysis, as well as the fact that "the statute itself contains no language requiring scienter for SLUSA to apply," and that, in light of the purpose of SLUSA, "[i]t would make little sense . . . to preempt claims that exactly track federal law, but permit state class actions where state law permits even broader liability than federal securities law"); Feitelberg v. Merrill Lynch & Co., 234 F. Supp. 2d 1043, 1051 (N.D. Cal. 2002) ("This argument proves too much, for if by merely omitting scienter allegations plaintiff can avoid SLUSA's preemption

15

effect, SLUSA would be totally eviscerated. . . . In other words, if it looks like a securities fraud claim, sounds like a securities fraud claim and acts like a securities fraud claim, it is a securities fraud claim, no matter how you dress it up."), aff'd per curiam, 353 F.3d 765 (9th Cir. 2003). But see Green v. Ameritrade, Inc., 120 F. Supp. 2d 795, 798 (D. Neb. 2000), aff'd on other grounds, 279 F.3d 590 (8th Cir. 2002); Burns v. Prudential Sec., Inc., 116 F. Supp. 2d 917, 923-24 (N.D. Ohio 2000). Moreover, as long as claims meet all of the elements of SLUSA, courts have generally held that SLUSA precludes those claims—regardless of how artfully or cleverly plaintiffs attempt to plead them. See, e.g., Rowinski v. Salomon Smith Barney, Inc., 398 F.3d 294, 299-304 (3d Cir. 2005) (holding that SLUSA precluded certain claims under Pennsylvania law for breach of contract, unjust enrichment, and deceptive consumer practices); Miller v. Nationwide Life Ins. Co., 391 F.3d 698, 701-02 (5th Cir. 2004) (holding that SLUSA precluded a breach of contract action under Louisiana law); Dudek v. Prudential Sec., Inc., 295 F.3d 875, 879-80 (8th Cir. 2002) (holding that SLUSA precluded nine causes of action under New York law, including fraud and deceit, breach of fiduciary duty, deceptive business practices, negligent misrepresentation, and unjust enrichment).

In its *amicus* brief to the Second Circuit in Dabit, the SEC provided a cogent analysis of the proper scope of SLUSA, much of which is relevant here. See Brief of the SEC as *Amicus Curiae* on Issues Addressed, Dabit v. Merrill

16

Lynch, Pierce, Fenner & Smith, Inc., 395 F.3d 25 (2d Cir. 2005), vacated, 547

U.S. 71 (2006).[5]  The SEC explained that "the statute's language makes clear that

SLUSA preemption does not require an allegation of scienter."  Id. at 25; see also

id. at 27 ("[T]he language of SLUSA does not on its face require that the

plaintiff's allegations state a scienter-based claim, as required under Rule

10b-5.").  The SEC further explained:

> The imposition of a scienter requirement would also be inconsistent
> with SLUSA's principal purpose . . . .  While part of Congress's
> concern was the procedural constraints on class action litigation,
> another concern was compelling compliance with the PSLRA's
> heightened scienter pleading standard, which requires plaintiffs in
> Rule 10b-5 cases to allege scienter with greater specificity than many
> courts had previously required.  To the extent that migration toward
> state courts had been fueled by this requirement, it would have been
> because plaintiffs found it difficult, after the PSLRA, to make an
> adequate claim of scienter in Rule 10b-5 cases.  If it were to be held
> that SLUSA does not apply to a case which cannot, for lack of an
> allegation of scienter, be brought under Rule 10b-5, this objective of
> SLUSA would be largely undercut.  SLUSA could not compel
> compliance with the PSLRA's scienter pleading standard, since it
> simply would not apply to any class action complaint that could not
> comply with the PSLRA standard.  Congress could not have intended
> such a self-defeating result.

Id. at 27-29 (citations omitted).  Along these lines, the SEC also noted that

"[n]othing in the language of SLUSA suggests that any of the other requirements

of a private Rule 10b-5 action—such as statute of limitations, reliance, loss

causation—must be met before SLUSA preemption will apply."  Id. at 29 n.7.

---

[5] A copy of the SEC's *amicus* brief to the Second Circuit is available at
http://www.sec.gov/litigation/briefs/dabit062204.pdf.

The SEC was quick to clarify, however, that "[t]he clear language of SLUSA . . . requires that the action allege a misrepresentation or misleading omission or other deception," so "a pure breach-of-contract claim—with no allegation of misrepresentation—[does not] come[] within the terms of the preemption provisions." Id. at 24.

In light of these authorities, the district court was correct that SLUSA precluded Plaintiffs' claims, and that Plaintiffs did not have to allege scienter or reliance for SLUSA to apply. Plaintiffs do not contest that their claims constitute a "covered class action," that is based on state law, and that is "in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1). Nor do Plaintiffs' claims fit within one of the exceptions provided under SLUSA. See 15 U.S.C. § 78bb(f)(3)-(4). Most importantly, in their Complaint, Plaintiffs make several allegations regarding "misrepresentation[s] or omission[s] of a material fact" and/or "manipulative or deceptive device[s] or contrivance[s]." See, e.g., Compl., ROA, Vol. I, at 13, ¶ 46 ("Naked short selling can present substantial manipulation concerns."); id. at 15, ¶ 54 ("It is the inevitable market imbalances, the unfair leverage gained, and the largely unchecked potential for manipulation in the naked short seller-prime broker context that is at the heart of this action. And, it is the interaction between one or more major short sellers of Solv-Ex stock and their prime broker Merrill Lynch, and how those interactions caused Merrill Lynch to abruptly set in motion the events necessitating the sale of

18

Rendall's pledged shares, that is the necessary subject for inquiry in this action."); id. at 24-25, ¶¶ 92, 94, 96-99 (contending that, on several occasions, the "Zweig Entities sold Solv-Ex shares through their Merrill Lynch prime brokerage accounts," that "[e]ach sale was a short sale," and that they did not later purchase Solv-Ex shares to cover these short sales, or otherwise "close[] out their short positions in Solv-Ex"); id. at 35, ¶ 153 ("The reasonable inferences to be drawn from the facts now known, however, are that Merrill Lynch, alone or in concert with other persons or parties, intentionally acted to harm Mr. Rendall and thereby the Plaintiffs."). All of the substantive counts listed in Plaintiffs' Complaint incorporate these allegations by reference.[6] Also, several of the individual counts

---

[6] A few courts have held that, because SLUSA uses the word "action," SLUSA requires dismissing the entire class action complaint if one or more of the individual claims is precluded by SLUSA. See, e.g., In re Lord Abbett Mut. Funds Fee Litig., 463 F. Supp. 2d 505, 508 (D.N.J. 2006) ("[O]nce we found Counts Seven through Ten preempted by SLUSA, we were required to dismiss the entire class action, including Counts Three and Four, and not grant Plaintiffs leave to file a new complaint alleging an entirely new and different action."); see also Rowinski, 398 F.3d at 305 ("As an initial matter, we question whether preemption of certain counts and remand of others is consistent with the plain meaning of SLUSA. The statute does not preempt particular 'claims' or 'counts' but rather preempts 'actions,' 15 U.S.C. § 78bb(f)(1), suggesting that if any claims alleged in a covered class action are preempted, the entire action must be dismissed.").

In the instant case, however, Plaintiffs have incorporated their general allegations into each of their substantive counts—which are based only on New Mexico law—so SLUSA precludes all of Plaintiffs' claims individually. Thus, we need not decide whether, in another action, SLUSA would permit the preclusion of certain claims and the remand of others. See Rowinski, 398 F.3d at 305 ("But we need not decide whether a count-by-count analysis is appropriate in this case, because plaintiff has incorporated every allegation into every count in his

(continued...)

19

themselves allege "misrepresentation[s] or omission[s] of a material fact" and/or "manipulative or deceptive device[s] or contrivance[s]." See, e.g., id. at 39, ¶ 164 ("Merrill Lynch dominated, interfered with, or misled the Plaintiffs in the exercise of their rights in their Solv-Ex common stock shares."); id. at 43, ¶ 174 ("Merrill Lynch's acts and failures to act as alleged herein constitute a 'device, scheme or artifice to defraud' Plaintiffs . . . ."); id. at 45, ¶ 181 ("Merrill Lynch's acts and failures to act as alleged herein constitute a 'device, scheme or artifice to manipulate' the market in Plaintiff[s'] Solv-Ex common stock . . . ."); id. at 45, ¶ 185 ("By acting and failing to act as alleged herein, Merrill Lynch knowingly made false or misleading representations . . . ."). We conclude, therefore, that Plaintiffs' claims are precluded under SLUSA.

The cases that Plaintiffs cite in their brief do not compel a conclusion to the contrary. For instance, in Contreras v. Host America Corp., 453 F. Supp. 2d 416, 419 (D. Conn. 2006), the court held that SLUSA did not apply, but only because the suit—which involved less than 50 plaintiffs—did not qualify as a "covered class action." The court's "virtual identity" analysis came later, in a different jurisdictional context. See id. at 419-21. The Southern District of New York's opinion in Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc., 341 F. Supp. 2d 258, 265-70 (S.D.N.Y. 2004), provides some support for Plaintiffs,

---

[6](...continued)
complaint. Our SLUSA analysis therefore applies to each of plaintiff's counts, and compels the conclusion that each is preempted.").

20

but as we have explained above, the weight of the authority is overwhelmingly against them.

B.    *Denial of leave to amend the Complaint*

The district court did not abuse its discretion in refusing to grant Plaintiffs leave to amend their Complaint. "We review the denial of a motion to amend for abuse of discretion." Anderson v. Suiters, 499 F.3d 1228, 1238 (10th Cir. 2007). The Federal Rules of Civil Procedure provide that the district court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The district court is not required to grant leave to amend, however, if amendment would be futile. Anderson, 499 F.3d at 1238. "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." Id. (citations and internal quotation marks omitted). In the instant case, Plaintiffs requested leave to amend their Complaint to allow them to "either recast their claims so as to cure any SLUSA-related 'defects,' or recast their claims exclusively as a derivative action." Plaintiffs' Response, ROA, Vol. I, at 145.

Any amendment by Plaintiffs here would have been futile. SLUSA precluded all of the substantive counts that Plaintiffs alleged in their Complaint, so Plaintiffs could not have saved their Complaint by withdrawing a few of the counts. Additionally, Plaintiffs have nowhere explained how they could transform their Complaint into a derivative action on behalf of Solv-Ex, nor did they attach a proposed amended complaint to their response filed with the district

21

court, as required by D.N.M. Civ. R. 15.1. As the Eighth Circuit has explained:

> Finally, plaintiffs argue the district court abused its discretion in denying them leave to file an amended complaint. Plaintiffs first raised this issue at the end of their brief to the district court on the removal and preemption issues, stating that "if defendants' motion to dismiss is granted, plaintiffs[] should be permitted to file an amended complaint." Plaintiffs did not include a proposed amended pleading, as Local Rule 15.1 of the Northern District of Iowa requires. Nor did plaintiffs describe what changes they would make to avoid SLUSA preemption, or what non-futile federal causes of action they would seek to assert. In these circumstances, the district court did not abuse its discretion in granting defendants' motion to dismiss.

Dudek, 295 F.3d at 880 (citation omitted). For similar reasons, the district court in the instant case did not abuse its discretion.[7]

AFFIRMED.

---

[7] Because the district court did not abuse its discretion here, we need not decide whether the provisions of SLUSA, by themselves, prohibit Plaintiffs from amending their Complaint. See U.S. Mortgage, Inc. v. Saxton, 494 F.3d 833, 842-43 (9th Cir. 2007) (recognizing a split on this issue and concluding that SLUSA does not prohibit post-removal amendment of a complaint).