**FILED**
**United States Court of Appeals**
**Tenth Circuit**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**April 18, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

K. A.,

    Plaintiff - Appellant,

v.

MICHELLE BARNES, in her official
capacity; ARAPAHOE COUNTY
DEPARTMENT OF HUMAN SERVICES,
DIVISION OF CHILD AND ADULT
PROTECTION SERVICES; MICHELLE
DOSSEY, in her official capacity;
ARAPAHOE COUNTY BOARD OF
COUNTY COMMISSIONERS,

    Defendants - Appellees.

No. 24-1188

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:23-CV-01558-NYW-KAS)**
_____

Kristine L. Brown, Denver, Colorado, (Suzanne Taheri, West Law Group, Denver, Colorado, with her on the briefs), for Plaintiff-Appellant.

Writer Mott, Arapahoe County Attorney's Office, Littleton, Colorado, and Jennifer L. Carty, Colorado Attorney General's Office, Denver, Colorado, (Rebecca M. Taylor, Arapahoe County Attorney's Office, Littleton, Colorado, and Aaron J. Pratt, Colorado Attorney General's Office, Denver, Colorado, with them on the brief), for Defendants-Appellees.
_____

Before **HARTZ**, **EID**, and **FEDERICO**, Circuit Judges.
_____

**HARTZ**, Circuit Judge.

_____

K.A. and C.P.[1] were married and had three daughters. The family did not function well. The marriage ended in divorce, and the Arapahoe County Department of Human Services (ACDHS) initiated several actions against K.A. regarding her relationships with her children, culminating in the termination of her parental rights and the entry of several contempt judgments against her. She filed a notice of appeal challenging the termination, but it was denied as untimely by the Colorado Court of Appeals, and the Colorado Supreme Court declined review. She also sought to appeal one of her contempt sentences, but again the court held that her appeal was untimely.

This appeal concerns K.A.'s complaint under 42 U.S.C. § 1983 filed in the United States District Court for the District of Colorado against Michelle Barnes, Executive Director of the Colorado Department of Human Services (CDHS), in her official capacity; ACDHS; and Michelle Dossey, Manager of the ACDHS Division of Child and Adult Protective Services, in her official capacity. The Arapahoe County Board of Commissioners was originally named as a defendant but was dismissed by K.A. and is not a party to this appeal.

The district court dismissed K.A.'s claims and denied her motion to amend her complaint. She filed a timely appeal. We affirm. We agree with the district court that

---

[1] K.A. and C.P. are referred to by their initials to protect the minor children and their family members from public disclosure.

it lacked jurisdiction to hear the claims in her complaint, and K.A. failed to explain how the jurisdictional deficiencies would be cured by her amended complaint.

## I.     BACKGROUND

K.A.'s complaint raises claims under 42 U.S.C. § 1983 against all defendants for violating her rights to procedural due process (Count One), substantive due process (Count Two), and equal protection (Count Three). It alleges that her due-process rights were violated because the defendants failed to adequately investigate abuse allegations against C.P. and relied on falsified and misleading information in initiating dependency-and-neglect and parental-termination proceedings against K.A. It also alleges that the 21 days provided by Colorado Appellate Rule 3.4 to appeal the termination of her parental rights were insufficient to provide her due process because she was incarcerated during that period. K.A.'s equal-protection rights were allegedly violated because the parental-alienation theory—upon which the termination of her rights was based—applies only to divorced parents, and because she was denied procedural benefits available to Indian parents under the Indian Child Welfare Act, 25 U.S.C. § 1912. Almost all the allegations of the complaint concern the actions of ACDHS. The only allegations that mention Ms. Barnes are the final paragraphs of these three counts, which state, with minor variations: "The laws of Colorado enforced by Defendant Barnes deprived Plaintiff of her rights, privileges, liberties, and immunities secured by the Constitution of the United States." Aplt. App., Vol. 1 at 28; *see also id.* at 34.

K.A. brought three additional claims under § 1983 against all defendants except Ms. Barnes: (1) a First Amendment claim challenging the state court's orders forbidding her from discussing her case with others and compelling her to lie to her children about her health condition (Count Four); (2) a First Amendment claim alleging that the defendants engaged in viewpoint discrimination by targeting her for her "viewpoints on vaccination and healthy food," (Count Five), Aplt. App., Vol. 1 at 35; and (3) a claim that defendants formed a civil-rights conspiracy with C.P.'s attorney to deprive K.A. of her parental rights (Count Six).

What limits federal-court jurisdiction in this case, however, is not the claims but the relief sought. K.A.'s complaint requested the following relief:

1. Reverse the termination of Plaintiff's parental rights; and if not,
2. Order a new hearing wherein Plaintiff may appeal the termination of her parental rights;
3. Issue a declaratory judgment that 21 days to appeal the permanent removal of a fundamental right is inadequate and a violation of Due Process;
4. Strike the unconstitutional portion of CO Rev Statute § 19-3-612 and the 21-day, no exception limit to appeal a permanent termination in Colo. R. App. 3.4.
5. Issue a declaratory judgment that Defendants may not engage in viewpoint discrimination against parents who do not vaccinate their children or who follow particular dietary plans;
6. Issue a declaratory judgment that it is unconstitutional to permanently strip divorced parents of parental rights based on alienation of affection from the other parent since this is a category of "abuse" not wielded against married parents and that creates unequal treatment of parents and children based on familial or marital status;
7. Issue a declaratory judgment that the federal standards in the Indian Child Welfare Act affirming that states must take action to prevent the breakup of Indian families before terminating parental rights should not be race-based and should apply to families of all races, where physical, sexual, and substance abuse is not at issue;
8. Grant Plaintiff damages for being unconstitutionally jailed;

4

9. Grant Plaintiff her costs, expenses, and reasonable attorneys' fees; and

10. Grant any other relief or declarations this Court deems just and proper.

Aplt. App., Vol. 1 at 39. As we explain below, the district court lacked jurisdiction to grant any of the requested relief.

## II.    DISCUSSION

The district court could not grant the relief sought in the complaint because sovereign immunity bars the recovery of damages; the *Rooker-Feldman* doctrine, *see Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983), bars setting aside the orders and judgments of the state courts; any retrospective declaratory relief is barred by sovereign immunity; and any prospective declaratory relief is barred by lack of standing, failure to preserve, or sovereign immunity. As for the proposed amendments to the complaint, the district court's denial of leave to amend was not an abuse of discretion because K.A. failed to even attempt to explain how the amendments cured the jurisdictional defects in the original complaint. We address these issues in turn.

### A.    Damages and Sovereign Immunity

"The Eleventh Amendment generally bars suits against a state in federal court commenced by citizens of that state or citizens of another state." *Good v. Dep't of Educ.*, 121 F.4th 772, 788 (10th Cir. 2024) (emphasis and internal quotation marks omitted). This bar is jurisdictional. *See id.* at 788–89. It encompasses not just suits against the State itself but also suits against "governmental entities that are arms of the state." *Id.* at 789 (internal quotation marks omitted). In particular, it bars suits

seeking monetary damages from the State or its arms. *See Tarrant Reg'l Water Dist. v. Sevenoaks*, 545 F.3d 906, 911 (10th Cir. 2008) ("The Eleventh Amendment has been interpreted to bar suits against states and state agencies for money damages in federal court.").

In this opinion we will treat CDHS and ACDHS as arms of the State. The complaint alleges that CDHS is a state agency, and we have no doubt that it is. *See Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) (treating CDHS as an arm of the state when there was no dispute between the parties on that point). As for ACDHS, the district court ruled that it is also an arm of the state. *See Romero v. City & Cnty. of Denver Dep't of Soc. Servs.*, 57 F. App'x 835, 837 (10th Cir. 2003) ("In Colorado, municipal departments of social services are in reality arms of the state . . . ." (internal quotation marks omitted)); *Wigger v. McKee*, 809 P.2d 999, 1004 (Colo. App. 1990) (holding ACDHS to be an arm of the state). K.A. does not challenge that ruling on appeal. We therefore take it as a given that it is an arm of the state. Although a concession by a party that this court has jurisdiction does not relieve us of the obligation to assure ourselves that we have jurisdiction to address an issue, we have no obligation to look for grounds for jurisdiction not presented by a party. *See Los Alamos Study Grp. v. U.S. Dep't of Energy*, 692 F.3d 1057, 1066 n.2 (10th Cir. 2012). It is not a violation of Article III of the Constitution for a court to mistakenly decide or assume that it lacks jurisdiction to hear a dispute. *See Pliuskaitis v. USA Swimming*, 720 F. App'x. 481, 485 (10th Cir. 2018) (per curiam) ("Although a party cannot concede subject-matter jurisdiction, it can concede lack of

6

subject-matter jurisdiction. A court has a duty to examine its jurisdiction to determine whether it can review a matter; but it has no duty to insist on exercising jurisdiction against the wishes of the parties."). Because ACDHS and CDHS are arms of the state, we lack jurisdiction to hear claims for damages against them.

This jurisdictional bar also protects defendants Barnes and Dossey. If an agency is an arm of the state, its sovereign immunity from actions for damages extends to its officials sued in their official capacities. This is because a suit for damages "against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citation omitted); *see id.* at n.10 (distinguishing suits for damages from suits for injunctive relief against state officials in their official capacities). Because Ms. Dossey and Ms. Barnes are officials of ACDHS and CDHS respectively and are sued solely in their official capacities, they are protected by the Eleventh Amendment and are not amenable to suit for damages.

Hence, the damages claims against all defendants are barred.

### B.    The *Rooker-Feldman* Doctrine

K.A. requests that the court "[r]everse the termination of [her] parental rights" and "[o]rder a new hearing wherein [she] may appeal" that termination. Aplt. App., Vol. 1 at 39. These requests are barred by the *Rooker-Feldman* doctrine. Under that doctrine, federal district courts lack jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the

district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). *Rooker-Feldman* bars a "losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. DeGrandy*, 512 U.S. 997, 1006 (1994). "The essential point is that barred claims are those complaining of injuries *caused* by state-court judgments." *Campbell v. City of Spencer*, 682 F.3d 1278, 1283 (10th Cir. 2012) (internal quotation marks omitted, emphasis added).

K.A. asks the district court to nullify the termination of her parental rights—a state-court judgment upheld by the Colorado appellate courts. But an action to void a state-court judgment is a quintessential case for application of *Rooker-Feldman*. K.A.'s request for a new hearing to allow her to appeal the termination of her parental rights compels the same conclusion. The Colorado appellate courts barred K.A. from appealing the termination because her notice of appeal was untimely. To order a new hearing would be to nullify that state-court ruling. She cannot be permitted to appeal the termination in light of the ruling by the state appellate courts that the time had expired for her to do so. That decision may have been wrong; for example, the state-law time limits may be unconstitutional. But the applicability of the *Rooker-Feldman* doctrine does not depend on the correctness of the state-court ruling.

We note that K.A.'s complaint also purports to challenge the state court's allegedly unconstitutional protective orders. But K.A. does not seek any relief from

8

the protective orders other than damages, which we have already established are barred by sovereign immunity.

## C.    Declaratory Relief

There remain K.A.'s five requests for declaratory relief. K.A. states those requests in broad terms. To some extent she may be seeking declarations regarding the legality of prior conduct, and to some extent she may be seeking declarations that certain conduct would be unlawful in the future. Our analysis is different for the two circumstances. To the extent she seeks retrospective declaratory relief, her requests are barred by sovereign immunity. And to the extent she seeks prospective declaratory relief, she lacks standing to pursue the matter or is barred by sovereign immunity. We begin with retrospective relief.

### 1.    *Retrospective Declaratory Relief*

We have already noted that all defendants are protected against damages claims by sovereign immunity. K.A.'s requests for declaratory relief against ACDHS are also barred. *See Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1252 (10th Cir. 2007) ("Eleventh Amendment immunity applies regardless of whether a plaintiff seeks declaratory or injunctive relief, or money damages.").

Whether K.A.'s requests for declaratory relief against the individual defendants are barred by sovereign immunity is a more complex question. "[U]nder the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), Eleventh Amendment immunity does not extend to a state official sued in his official capacity when the plaintiff seeks only prospective, injunctive [or declaratory] relief." *Tarrant*, 545 F.3d at 911. But

9

"*Ex parte Young* may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past." *Collins v. Daniels*, 916 F.3d 1302, 1316 (10th Cir. 2019) (internal quotation marks omitted). If a plaintiff "only has standing to seek retrospective declaratory relief," she "cannot proceed under *Ex parte Young*." *Id.*

Thus, to the extent K.A.'s requests for declaratory relief are retrospective, they do not fall within the *Ex parte Young* exception to sovereign immunity. The district court cannot issue a declaration that Ms. Dossey or Ms. Barnes "violated [her] federal rights in the past." *Id.* at 1314, 1316 (internal quotation marks omitted) (plaintiff who was no longer subject to pretrial supervision could not obtain declaratory relief under *Ex parte Young* because she alleged only past violations and any future harm was speculative); *Sherwood v. Marchiori*, 76 F.4th 688, 694 (7th Cir. 2023) (plaintiffs' equal-protection challenge to a state agency's denial of benefits could not proceed under *Ex parte Young* because they alleged only that the agency "violated their equal-protection rights in the past—not that [the agency] is continuing to do so today"); *Merritts v. Richards*, 62 F.4th 764, 772 (3d Cir. 2023) (declining to allow plaintiff to use *Ex parte Young* to pursue declaratory relief after a state agency acquired easements over his land because he pursued "declaratory relief based on . . . past violations of federal law," not on "an ongoing violation").

## 2.    *Prospective Declaratory Relief*

To the extent K.A.'s requests for declaratory relief are prospective—that is, to the extent she seeks declarations addressing the legality of imminent actions rather

than past wrongs—they fall within the *Ex parte Young* exception to sovereign immunity. The problem for K.A., however, is that she lacks standing to seek prospective declaratory relief.

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III [of the Constitution]." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "To qualify for standing, a claimant must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008). The injury cannot be "conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks omitted).

K.A. has not alleged any anticipated injury justifying prospective relief. We begin with her requests for declarations that defendants "not engage in viewpoint discrimination against parents," that "it is unconstitutional to permanently strip divorced parents of parental rights based on alienation of affection," and that "the federal standards in the Indian Child Welfare Act . . . should apply to families of all races." Aplt. App., Vol. 1 at 39.  Such declarations could assist only those who have parental rights, and K.A.'s likelihood of again having parental rights is speculative. *See Lippoldt v. Cole*, 468 F.3d 1204, 1218 (10th Cir. 2006) (plaintiff's testimony that she was "very likely" to apply for a parade permit in the future was inadequate to confer standing because "she did not specify a concrete plan to do so") (internal quotation marks omitted)); *Mikel v. Quin*, 58 F.4th 252, 259 (6th Cir. 2023), *cert. denied sub nom. Mikel v. Nichols*, 143 S. Ct. 2660 (2023) (plaintiff lacked standing to

seek prospective declaratory relief regarding the loss of foster children because she "does not operate a foster home now and has not suggested that she intends to do so later"). Because K.A. has not alleged that she is likely to be harmed by future allegedly discriminatory practices of ACDHS or CDHS, she has no standing to seek prospective relief regarding those practices.

K.A. also seeks a declaration that Colorado Appellate Rule 3.4's 21-day time limit for parental-termination appeals is unconstitutional. Once again, however, she would have no occasion to be appealing a termination of parental rights before she acquires parental rights that could be terminated. This prospect of termination is doubly speculative and can hardly support standing.

Finally, K.A. asks us to declare that Colo. Rev. Stat. Ann. § 19-3-612 unconstitutionally bars her from seeking the restoration of her parental rights. This statute provides an avenue for either a county department with custody of a child, a child 12 years of age or older, or a guardian ad litem to "file a petition to reinstate the parent-child legal relationship" if the child is in the legal custody of the county department. *Id.*, § 19-3-612(2), (3). The statute bars K.A. from seeking restoration of her parental rights through this procedure because C.P., not ACDHS, has custody of her children. We think it highly speculative that K.A. could satisfy the requirements of the statute even if it otherwise permitted former spouses of the custodial parent to regain custody. But even if she *does* have standing, her request for relief was forfeited below as to the ACDHS defendants and is barred by sovereign immunity as to Ms. Barnes.

12

We begin with Ms. Dossey. K.A. cannot now claim that she seeks declaratory relief against Ms. Dossey because she forfeited below any claim to that relief. In their motion to dismiss her complaint, the ACDHS defendants—including Ms. Dossey—argued that K.A.'s requests for declaratory relief were "not directed against the ACDHS defendants" because they "were not responsible for promulgating or drafting" the laws and rules that K.A. was challenging. Aplt. App., Vol. 2 at 259 n.3. K.A. failed to meaningfully respond to this argument in her reply. Her only arguably relevant statement was the bare assertion that declaratory relief could be granted against Ms. Barnes. In granting the ACDHS defendants' motion to dismiss, the district court took this failure to mention ACDHS as a "concession, in response to ACDHS Defendants' argument, that [K.A.] does not seek declaratory relief with respect to the Department, but only as to Defendant Barnes." *Id.*, Vol. 3 at 440. We agree that K.A. did not pursue declaratory relief regarding § 19-3-612 against the ACDHS defendants in district court. The claim is therefore forfeited and our review of the issue would be limited to whether K.A. has established plain error. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011). But her failure to argue plain error on appeal waives the issue entirely. *See id.* at 1130–31.

As for Ms. Barnes, declaratory relief is barred by sovereign immunity. *Ex parte Young* permits constitutional challenges to the enforcement of a state law through suits for prospective injunctive and declaratory relief against state officers in their official capacities. But only if the sued official has "a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Free*

13

*Speech Coal., Inc. v. Anderson*, 119 F.4th 732, 736 (10th Cir. 2024) (internal quotation marks omitted). A law is enforced by an official when the official "clearly . . . assisted or currently assist[s] in giving effect" to it. *Id.* (internal quotation marks omitted); *see, e.g.*, *Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742, 760 (10th Cir. 2010) (holding that plaintiffs could not challenge a particular statutory provision by suing the Oklahoma Attorney General under *Ex parte Young* "because the [plaintiffs] d[id] not cite to any Oklahoma law authorizing the Attorney General to enforce that provision").

K.A. has failed to identify any enforcement authority possessed by Ms. Barnes in connection with § 19-3-612. Although the complaint states that "[t]he laws of Colorado enforced by Defendant Barnes deprived Plaintiff of her rights," Aplt. App., Vol. 1 at 28, the complaint does not clarify *which* laws Ms. Barnes allegedly enforces. *See Free Speech Coal., Inc.*, 119 F.4th at 739 ("[W]e have explicitly held that *Ex parte Young* requires something more than a mere general duty to enforce the law." (internal quotation marks omitted)). Nothing in § 19–3–612 gives someone in Ms. Barnes's position responsibility for enforcing the statute. And K.A. has not pointed us to any other statutory provision conveying such responsibility, nor provided us with anything suggesting that someone in Ms. Barnes's position does in fact exercise any responsibility in that regard. Hence, sovereign immunity bars the requested declaratory relief against Ms. Barnes.

Because we lack jurisdiction to grant relief on *any* of K.A.'s requests for relief, we affirm the district court's grant of the defendants' motions to dismiss.

### D.    Motion to Amend

We turn next to the district court's denial of K.A.'s motion for leave to amend her complaint. On the same day that the district court dismissed K.A.'s original complaint, K.A. filed a motion for leave to file an amended complaint. The district court denied her motion to amend but granted K.A. leave to file a renewed motion after she had reviewed the court's opinion. The court cautioned that any renewed motion "must address and account for the Court's rulings reflected in this Memorandum Opinion and Order." Aplt. App., Vol. 3 at 442–43 n.10. Two weeks later, K.A. filed a second motion for leave to file an amended complaint.

The district court denied K.A.'s motion to amend, ruling that her proposed amendments would be futile because Colorado's statute of limitations would bar her claims. But we need not reach the statute-of-limitations question because K.A. failed (despite the court's instruction to consider and address its rulings) to explain how her proposed amendments would cure the jurisdictional flaws that were fatal to her original complaint. Instead, K.A. characterized the amendments as relating "*only* to the new information that demonstrates unconstitutional patterns and practices of the County, an ongoing conspiracy to deprive plaintiff of her constitutional rights, and a reason for equitable tolling of the statute of limitations." Aplt. App., Vol. 3 at 446 (emphasis added); *see* Aplt. Br. at 26–27 (same). K.A. contended that this new information "bolster[ed]" her claims, Aplt. App., Vol. 3 at 447, but did not explain how the amendments cured the jurisdictional deficiencies. For example, in the motion's section

addressing standing, K.A. merely asserted that the facts in her original complaint were sufficient to establish standing and that her amendments "supported" standing. *Id.* at 451.

Although district courts "should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), they are "not required to" do so "if amendment would be futile," *Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1288 (10th Cir. 2008). Amendment is futile "if the complaint, as amended, would be subject to dismissal." *Id.* at 1288 (internal quotation marks omitted). When, as here, the party moving for permission to file an amended complaint gives the district court no reason to think that the amendment would overcome the court's reasons for dismissing the original complaint, the district court does not abuse its discretion in denying the motion. *See Moya v. Garcia*, 895 F.3d 1229, 1239 (10th Cir. 2018) (a "district court [does] not abuse its discretion in denying leave to amend when the claimant ha[s] failed to explain how an amendment would cure the deficiencies identified by the district court"); *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) ("We have recognized, on many occasions, that a district court does not abuse its discretion by denying a motion for leave to amend when the plaintiff fails to establish that the proposed amendment would cure the deficiencies identified in the earlier complaint.").

## III.    CONCLUSION

We **AFFIRM** the district court's dismissal of the case and denial of the motion to amend the complaint.